[No. B095831. Second Dist., Div. Six. Jan. 6, 1997.]

ROBERT J., Plaintiff and Appellant, v.
LESLIE M., Defendant and Respondent.

**COUNSEL**

Nielson, Wedding & McNair and Jean F. McNair for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Carol Ann White and Mary A. Roth, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**YEGAN, J.**—Robert J. (appellant) judicially admitted being the legal father of Ryan R. in April of 1990. In February 1995, he sought a declaration of nonpaternity. The trial court applied the doctrine of res judicata and denied relief. We affirm.

*Facts and Procedural History*

Appellant and Leslie M. (Leslie) were never married but had a brief sexual relationship. In May 1989, Ryan R. (Ryan) was born to Leslie in Texas. Appellant moved from Texas to California in June 1989. In March 1990, the Ventura County District Attorney Child Support Division filed a complaint to establish that appellant was the father of Ryan. (Welf. & Inst. Code, §§ 11350, 11350.1.) Although he did not believe he was Ryan's father, appellant stipulated to paternity in April 1990. He did not ask for appointment of counsel or demand blood tests. (Fam. Code, § 7550 et seq.

[formerly Evid. Code, § 890 et seq.].)[1] Appellant admitted to paternity because he was concerned that a paternity suit would jeopardize his application to become a deputy sheriff in San Diego. He agreed to pay $204 per month child support, and to continue support until Ryan reached the age of majority. Appellant was also ordered to reimburse $2,400 for Aid to Families with Dependent Children (AFDC) received by Leslie.

Appellant's parents in Texas took care of Ryan for about four and one-half years. Appellant's relationship with Ryan has not been close. He has seen Ryan only a few times.

Over the years, appellant asked Leslie to agree to blood tests to ascertain whether he was Ryan's biological father. In July 1994 she reluctantly agreed and the tests excluded appellant as Ryan's biological father.[2]

In February 1995, appellant filed a complaint to establish nonpaternity, purportedly pursuant to Family Code section 7630, subdivision (a)(2).[3] In March 1995, appellant filed an order to show cause to consolidate his complaint to establish nonpaternity with the county's original paternity complaint.

The trial court did not consolidate the cases due to a statutory prohibition in Welfare and Institutions Code section 11350.1. It did, however, take judicial notice of the original paternity action. The county appeared pursuant to Welfare and Institutions Code section 11475.1.

For purposes of the hearing, the parties stipulated that appellant was not Ryan's biological father. The county argued that the 1990 judgment of paternity was res judicata and that it was not in Ryan's best interests to terminate the legal parent-child relationship. Appellant argued that it would be inequitable to require him to continue support because he is not Ryan's biological father.

The trial court found that appellant timely brought the action within the meaning of section 7630, subdivision (a)(2). It also determined that his relationship with Ryan "has been tangential at best." It found that appellant

---

[1]Attached hereto as an appendix is the written stipulation and judgment. These forms could serve as a paradigm in an action to declare paternity. The advisements and waivers required are such that any reasonable person would know that such an admission was being made upon a serious and solemn occasion that would permanently affect the rights of the parties.

[2]Leslie was not required to submit to the tests. (*City and County of San Francisco* v. *Stanley* (1994) 24 Cal.App.4th 1724, 1728-1729 [30 Cal.Rptr.2d 106]; *City and County of San Francisco* v. *Cartagena* (1995) 35 Cal.App.4th 1061, 1065-1066 [41 Cal.Rptr.2d 797].)

[3]All further references are to the Family Code unless otherwise stated.

had stipulated to paternity without counsel to avoid a lawsuit while seeking employment as a deputy sheriff. Nevertheless, it ruled that the doctrine of res judicata precluded relitigation of paternity.

*Standing to Bring an Action to Declare Nonpaternity*

■ Appellant lacks standing under the Family Law Code to bring this action. Only a presumed father, as defined by section 7611, may seek a declaration of nonpaternity. (§ 7630, subd. (a)(2).) Appellant is not, and never has been, a presumed father of Ryan. (§ 7611.)[4]

In allowing appellant to maintain the action, the trial court did not follow the requirements of section 7630. The statute allows a broad class of men, including "alleged" fathers, to bring an action to establish paternity. (§ 7630, subds. (b) and (c).) However, it expressly limits standing to presumed fathers in actions to establish nonpaternity. (§ 7630, subd. (a)(2).)

Nothing in *Adoption of Matthew B.* (1991) 232 Cal.App.3d 1239 [284 Cal.Rptr. 18], or *In re Shereece B.* (1991) 231 Cal.App.3d 613 [282 Cal.Rptr. 430], or *Fuss* v. *Superior Court* (1991) 228 Cal.App.3d 556 [279 Cal.Rptr. 46], interprets section 7630 so broadly as to confer standing on persons other than presumed fathers. These cases concern a person who was granted standing to establish or maintain parental rights, not to deny or terminate

---

[4]Section 7611 provides: "A man is presumed to be the natural father of a child if he meets the conditions provided in Chapter 1 (commencing with Section 7540) or Chapter 3 (commencing with Section 7570) of Part 2 or in any of the following subdivisions: [¶] (a) He and the child's natural mother are or have been married to each other and the child is born during the marriage, or within 300 days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce, or after a judgment of separation is entered by a court. [¶] (b) Before the child's birth, he and the child's natural mother have attempted to marry each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid, and either of the following is true: [¶] (1) If the attempted marriage could be declared invalid only by a court, the child is born during the attempted marriage, or within 300 days after its termination by death, annulment, declaration of invalidity, or divorce. [¶] (2) If the attempted marriage is invalid without a court order, the child is born within 300 days after the termination of cohabitation. [¶] (c) After the child's birth, he and the child's natural mother have married, or attempted to marry, each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid, and either of the following is true: [¶] (1) With his consent, he is named as the child's father on the child's birth certificate. [¶] (2) He is obligated to support the child under a written voluntary promise or by court order. [¶] (d) He receives the child into his home and openly holds out the child as his natural child. [¶] (e) If the child was born and resides in a nation with which the United States engages in an Orderly Departure Program or successor program, he acknowledges that he is the child's father in a declaration under penalty of perjury, as specified in Section 2015.5 of the Code of Civil Procedure. This subdivision shall remain in effect only until January 1, 1997, and on that date shall become inoperative."

them. Because the statute distinguishes between the two types of actions, these cases are distinguishable and do not confer standing on appellant.

*Res Judicata*

■ The doctrine of res judicata requires that we affirm the 1995 judgment. This action is barred and neither the interests of justice, nor the best interests of Ryan, are served by allowing appellant to relitigate paternity.

■ Res judicata is one of the oldest and least flexible doctrines in American jurisprudence. It is also one of the most important. As our Supreme Court held in *Slater* v. *Blackwood* (1975) 15 Cal.3d 791, 797 [126 Cal.Rptr. 225, 543 P.2d 593]: "The consistent application of the traditional principle that final judgments, even erroneous ones [citations], are a bar to further proceedings based on the same cause of action is necessary to the well-ordered functioning of the judicial process. It should not be impaired for the benefit of particular plaintiffs, regardless of the sympathy their plight might arouse in an individual case." The rule in *Slater* is particularly appropriate here. ■ If there is one class of judgments where the doctrine of res judicata should be scrupulously honored, it is a paternity judgment. Were we to rule in appellant's favor, we would violate this rule and spawn other attempts to reopen paternity judgments.

For the most part, California courts have resisted the temptation to undermine the finality of prior judgments. In *Greenfield* v. *Mather* (1948) 32 Cal.2d 23 [194 P.2d 1], however, the court stated: "[I]n rare cases a judgment may not be res judicata . . . and there are rare instances in which [res judicata] is not applied. In such cases it will not be applied so rigidly as to defeat the ends of justice or important considerations of policy." (*Id.*, at p. 35.) These exceptions are extremely narrow and have never enjoyed wide approval or frequent application. In fact, the *Slater* court considered them to be "of doubtful validity" and noted that they had been severely criticized. (*Slater* v. *Blackwood, supra,* 15 Cal.3d at p. 796.) We need not discuss the "public policy" exception because appellant's predicament does not concern a matter of general public concern. (*Arcadia Unified School Dist.* v. *State Dept. of Education* (1992) 2 Cal.4th 251, 259 [5 Cal.Rptr.2d 545, 825 P.2d 438].) The "ends of justice" exception is equally inapplicable.

In this case, as in any other child custody or paternity matter, the "ends of justice" are served when we fulfill our obligation to protect the best interests of the child. (*Guardianship of Claralyn S.* (1983) 148 Cal.App.3d 81, 85-86 [195 Cal.Rptr. 646].) Reversal would deprive Ryan of financial support and

sever his legal tie to the paternal grandparents who have been the primary caregivers.[5] As a further consequence, reversal would undermine the finality of every stipulated paternity judgment obtained under the Welfare and Institutions Code, and the financial security of all similarly situated children.

Appellant contends reversal will serve the ends of justice because he should not be required to support a child to whom he has no biological relation. Yet appellant's predicament is entirely self-created. He voluntarily admitted, under penalty of perjury, that he was Ryan's legal father. Both Leslie and the State of California relied upon this judicial admission. With full knowledge of his rights, and without coercion, appellant stipulated to the entry of a judgment requiring him to pay support until Ryan reaches adulthood. That judgment is final even if its factual underpinning is erroneous. (*Slater* v. *Blackwood*, *supra*, 15 Cal.3d at p. 797.)

### Due Process

■ Appellant contends that his due process rights require a declaration of nonpaternity. He relies upon the phrase, "[t]he touchstone of due process is fundamental fairness" (*Salas* v. *Cortez* (1979) 24 Cal.3d 22, 27 [154 Cal.Rptr. 529, 593 P.2d 226]), and claims that it is fundamentally unfair that he should be Ryan's legal father. Appellant asks us to isolate this biological fact as the controlling one. Timely establishment of this fact would have carried the day in 1990. That time has passed. There are other interests at stake. Ryan has an interest in having a legal father. By reason of appellant's admission of paternity, Ryan may never know the identity of his biological father. (See *ante*, fn. 5.) Leslie has an interest in having a legal father for her son. The State of California has an interest in the sanctity and finality of its family law judgments and in obtaining support for the children of single parents. These interests outweigh appellant's interest in avoiding the financial consequences of the 1990 judgment.

It is true that there is not much, if any, father-son relationship between appellant and Ryan. This was appellant's election, not Ryan's. Moreover, Ryan has a legal as well as a loving relationship with his legal paternal grandparents. If appellant is allowed to relitigate the 1990 judgment, the legal aspect of this formative relationship will be destroyed.

Thus, it is not fundamentally unfair to foreclose relitigation of paternity. Appellant signed waivers and admissions in 1990 with full knowledge of the

---

[5]As the Attorney General so aptly points out, the trail to Ryan's biological father is about eight years old. If appellant is freed from the support obligation, the inference that financial support may once again be borne by the taxpayers is at least permissible.

consequences of his action. We will not deprive Ryan of the emotional support he receives from his paternal grandparents, or the financial support he receives from his legal father. Far from supporting appellant's position, fundamental fairness requires that we preserve the finality of stipulated paternity judgments and hold appellant to the promise he made in 1990.

## Conclusion

The judgment (order denying complaint to establish nonpaternity) is affirmed.

Stone (S. J.), P. J., and Gilbert, J., concurred.

APPENDIX

MICHAEL D. BRADBURY
District Attorney
Child Support Division
4651 Telephone Road, Suite 101
Ventura, CA 93003

Telephone: (805) 654-5200

Appearance pursuant to Welf. & Inst. Code § 11475.1

**FILED**

APR 2 4 1990

SHEILA GONZALEZ, Superior Co
Executive Officer and Clerk

By_____, Dept

### SUPERIOR COURT OF CALIFORNIA, COUNTY OF VENTURA

COUNTY OF VENTURA and COUNTY OF VENTURA
on behalf of RYAN R,
a minor

Plaintiffs,

vs.

ROBERT J,

Defendant.

Court No. D183975

D.A. No. 89-2400-5/2258111

**STIPULATION TO ENTRY OF
JUDGMENT DETERMINING PATERNITY;
FOR SUPPORT; AND REIMBURSEMENT;
AND JUDGMENT AND ORDER THEREON**

IT IS HEREBY STIPULATED BY AND BETWEEN THE PARTIES HERETO:

1. Defendant is the father of Ryan R born May 12, 1989.

2. Defendant shall pay $ 200.00 per child per month for the support and maintenance of said childr plus a support payment processing fee of 2% of each support payment for a total of $ 204.00 commencing on the May 1, 1990 and continuing on the 1st day of ea month thereafter until termination by operation of law or further order of the court.

3. Defendant shall provide medical support for said minor child(ren), in compliance with Civil Code Section 4726.-

4. Defendant shall pay the total sum of $ 2400.00 in monthly installments of $ 50.00 month commencing on May 1, 1990 and continuing on the 1st c of each month thereafter until paid in full as and for reimbursement of plaintiff for past child supp provided by plaintiff for said child(ren).

5. If defendant defaults on payment of any installment when due, the balance of the total sum shall beco due and payable with interest.

6. Defendant shall make all payments by cash, cashier's check, money order or military allotment paya to the District Attorney, Post Office Box 3749, Ventura, CA 93006.

7. Defendant's wages and salary are ordered assigned to the District Attorney to the extent required to p any amounts ordered herein and all accrued arrearages.

8. Defendant shall notify the District Attorney's Child Support Division, in writing, of any change in addr or employment within ten days from the date of any such change.

9. Said order is without prejudice to any other method of collection.

---

STIPULATION TO ENTRY OF JUDGMENT DETERMINING PATERNITY; FOR SUPPORT; AND REIMBURSEMENT; AND JUDGMENT AND ORDER THEREON

DACSD-1605 (Rev. 2/87)

P

APPENDIX

COUNTY vs. J■■■■■ D163975

10. Concurrent with the execution of this stipulation, defendant, who is not represented by an attorney, has read, understood, and executed a statement acknowledging and waiving rights. This statement and waiver is attached hereto and incorporated herein by reference.

DATED: April 16, 1990

MICHAEL D. BRADBURY, District Attorney
County of Ventura, State of California

By: _Frank Mcel_
DEPUTY DISTRICT ATTORNEY

DATED: April 9, 1990

ROBERT J ■■■■■■
DEFENDANT

Social Security No. ■■■■■■
Address: ■■■■■■

DATED:

ATTORNEY FOR DEFENDANT

## JUDGMENT AND ORDER

On reading and filing the stipulation of the parties hereto for entry of judgment and order herein, and good cause appearing therefore:

IT IS HEREBY ADJUDGED AND ORDERED that defendant is the father of the minor child
and that defendant pay child support and reimbursement pursuant to said stipulation, and that the parties comply with all the provisions thereof.

DATED:

APR 23 1990

JUDGE WILLIAM L. PECK
JUDGE OF THE SUPERIOR COURT

1652

## STATEMENT ACKNOWLEDGING AND WAIVING RIGHTS

Court No. D183975

I have been asked by the District Attorney to sign A Stipulation for Entry or Modification of Judgment

☒ Determining Paternity

☒ Ordering Child Support

☒ Ordering Welfare Reimbursement or Arrears

I understand that the District Attorney is not my lawyer and does not represent me and that I cannot be prosecuted for refusing to sign the stipulation.

I understand that by signing the stipulation I will be admitting that I am the parent of the child(ren) named in the stipulation. I further understand that I have the following rights in connection with this matter and that by signing the stipulation and this statement, I will be waiving, or giving up, each of these rights:

1. The right to be represented by a lawyer and if I cannot afford to hire a lawyer, one will be provided for me by the court at no charge.
2. The right to have a trial to determine if I am the parent, either a trial by a jury or, if I prefer, a trial by a judge.
3. The right to have a trial or hearing before a judge to determine how much child support or welfare reimbursement I should pay based upon my ability to pay.
4. The right, at any trial, to confront and cross examine witnesses against me and to present evidence and to call witnesses in my own behalf.
5. The right to have blood tests, for which I may not be required to pay anything, and which could help prove whether I am or am not the father.

I understand that if an order for payment of child support is not included in the stipulation, a court hearing, which I may attend, may be scheduled at some time in the future to determine my financial ability to pay child support at that time.

If an order for payment of child support is included in the stipulation, I understand the following:

1. I must continue to pay any child support ordered until the child(ren) reach the legal age of emancipation, are emancipated before such age, or until changed by the court.
2. That my wages and salary are ordered assigned to the extent required to pay the amounts ordered and all accrued arrears and/or reimbursement.
3. Upon noticed hearing, the court has authority to increase or decrease the amount of child support at any time.
4. If I sign the stipulation and I fail to make the payments ordered, the duty to make the support payments may be enforced by any one or more of the following means:

 a. The court may find me in contempt and order me to pay a fine, or be jailed, or both.

SACSD-3067 (Rev. 2/87)

b. The District attorney may bring a criminal prosecution against me, the maximum penalty for which is a fine of $2,000.00 or one year in jail, or both.

C. The court may authorize the seizure of my property and order such property sold to pay the support payments.

d. The court may order my employer to withhold support payments from my wages and pay them directly to the person named by the court.

5. I understand that if I owe any welfare reimbursement or past due child support, the District Attorney may intercept my state and federal tax refunds and one-fourth of any unemployment benefits and apply the amounts intercepted to my account.

6. I understand that all judgments and orders of the court may be recorded in any county in which I may own property and will constitute liens on my property for any amounts ordered and unpaid.

I have read, initialed, and I understand each item printed above. Having in mind all of the rights mentioned in this statement and the consequences of signing the stipulation, I willingly, knowingly, intelligently and understandingly give up those rights and I freely and voluntarily sign this waiver and the stipulation. It is my choice to resolve this matter by waiving my rights and signing the stipulation without the assistance of any attorney and without having a trial or hearing.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED: 4-9-90

DEFENDANT

INTERPRETER

I have read and explained all of the above to the defendant in Spanish.

DATED: _____ _____
INTERPRETER