[No. B180135. Second Dist., Div. Seven. Feb. 15, 2006.]

In re the Marriage of DEBORAH and MICHAEL J. JACKSON.
DEBORAH ROWE JACKSON, Respondent, v.
MICHAEL J. JACKSON, Appellant.

## COUNSEL

Law Offices of Michael L. Abrams and Thomas Montague Hall for Appellant.

Browne Woods & George, Eric M. George; and Iris Joan Finsilver for Respondent.

## OPINION

**PERLUSS, P. J.**—The trial court in October 2001 granted the motion of Deborah Rowe Jackson to terminate her own parental rights to her two children, Michael Joseph Jackson, Jr., and Paris Michael Katherine Jackson, giving sole responsibility for the two children to their father, Michael J. Jackson. In April 2004 the trial court declared the October 2001 termination order void and in October 2004 denied Michael's[1] motion to vacate that part of the April 2004 order declaring the earlier termination of parental rights void. Michael appeals, contending the trial court properly terminated Deborah's parental rights in 2001. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Termination of Deborah's Parental Rights*

In October 1999 Deborah and Michael, married at the time, entered into a stipulation for judgment providing Michael would have sole legal and

---

[1] Because Deborah and Michael Jackson share the same last name, we refer to them by their first names not out of disrespect but to avoid confusion. (*Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1136, fn. 1 [97 Cal.Rptr.2d 707].)

physical custody of their two children, Michael, Jr., and Paris; Deborah was granted visitation rights. Deborah and Michael's marriage was dissolved in April 2000. Approximately six months later Deborah decided to stop visiting the children because, according to her, the visitation "was not working out for various reasons." Deborah agreed to a modification of the earlier child custody judgment, relinquishing her visitation rights.

In October 2001 Deborah filed a motion to terminate her parental rights. Deborah's declaration in support of her motion stated, "MICHAEL has been a wonderful father to the children and I do not wish to share parenting responsibilities with MICHAEL because he is doing so well without me. [¶] . . . I want to forever give up any and all rights pertaining to the children because I believe that by doing so, it is in the children's best interests." Deborah also stated she fully understood the implications of relinquishing her parental rights.

At the hearing on Deborah's motion, which Michael did not attend, Michael's counsel stated Michael did not oppose Deborah's motion and counsel was there "to facilitate a record that will allow the motion to be not only granted but enforceable."[2] Deborah was examined under oath by her counsel, as well as by Michael's counsel, to ensure she in fact wanted her parental rights terminated and fully understood the consequences of her action.[3] The court granted Deborah's motion, finding that, "[Deborah] has left the minor children in [Michael's] exclusive custody for a period in excess of one year. During such period, [Deborah] has not communicated with the children. [Deborah] believes that it is in the best interest of the minor children that her parental rights be terminated. . . . [¶] . . . Based on [Deborah's] belief that it is in the best interest of the minor children that they remain in [Michael's] exclusive custody without contact by [Deborah], the Court finds that there is clear and convincing evidence to terminate [Deborah's] parental rights pursuant to Family Code § 7822(b)."

---

[2] All trial court proceedings in this matter were held, pursuant to stipulation, before a retired judge. (See Cal. Const., art. VI, § 21.)

[3] In what now appears to be prescience, Michael's counsel asked Deborah, "Have you given any thought to somewhere down the road in the future the possibility that you may come across an article or read something about Michael that may cause you to believe that he is not as good a parent as you presently feel he is . . . ." "If that were to happen, do you understand that regardless of the truth of that article or the concern that you may have at that point in time, there would be nothing that you would have the right to do because if the court terminates your parental right, you can't come back and say, 'Now I want to be a parent.' " Deborah responded she had thought about that and, "I don't think he's capable of being a bad father. He loves his children too much. So, no, . . . if something came up where he couldn't be a father, I know that he would find someone who would help him to do what he couldn't do if he were to fall ill. I know he would find a good care taker to help him with the children."

## 2. Deborah's Ex Parte Application for an Order to Show Cause for Modification of, Among Other Things, Child Custody and Child Support

More than two years after Deborah's motion to terminate her parental rights had been granted, she filed an ex parte application for an order to show cause seeking, among other things, temporary exclusive custody of the children pending completion of a psychiatric evaluation to assist in determining what permanent custody would be in the best interest of the children. The application stated Deborah now sought temporary custody because of concerns arising from Michael's criminal prosecution and press reports Michael had associated with the Nation of Islam, whose members Deborah believed do "not like Jews." Because she is Jewish, Deborah feared the children might be mistreated if Michael continued his association with the Nation of Islam. Michael opposed Deborah's ex parte application in part on the ground Deborah lacked standing to request the court make any orders regarding the children because the court had previously terminated her parental rights.[4]

After several rounds of extensive briefing on a myriad of legal theories and following oral argument, the court on April 2, 2004 granted in part and denied in part Deborah's ex parte application. The court found its earlier order terminating Deborah's parental rights (the termination order) void because it had failed to order an investigation or consider appointment of counsel for the children, as required by Family Code sections 7850 and 7861. However, the court found there was no basis at that time to permit Deborah visitation or contact with the children. The court also ruled Deborah's request for psychiatric evaluation was not an emergency warranting ex parte relief but could be renewed through a properly noticed motion.

## 3. Michael's Motion to Vacate the Portion of the Court's Order Declaring the Termination Order Void

On September 16, 2004, after retaining new counsel, Michael moved to vacate that portion of the court's April 2, 2004 order declaring the termination order void on the ground the order was final and could not be directly or collaterally attacked. In response Deborah argued a void order could be collaterally attacked at any time. Relying on In re Marriage of Goodarzirad

---

[4] Deborah's ex parte application failed to mention her parental rights had been terminated. In response to Michael's identification of this significant omission, Deborah contended, "I did not intend to deceive the court with respect to the Parental Termination documents. I truly could not recall if that matter was ever before the court." Similarly, her counsel asserted, "I could not recall whether or not [Deborah] had actually terminated her parental rights."

(1986) 185 Cal.App.3d 1020, 1026 [230 Cal.Rptr. 203] (*Goodarzirad*) ("stipulations between parents involving the minor children which attempt to divest the court of jurisdiction are void"), Deborah asserted for the first time the termination order was void because it had been impermissibly based on Michael's and her stipulation to terminate her parental rights.

The court denied Michael's motion to vacate, finding that, even though Michael had not stipulated in writing to the termination of Deborah's parental rights, the termination proceeding "was the functional equivalent of a stipulated proceeding/stipulated agreement between the parties" and as such void under *Goodarzirad*. Notwithstanding its own statement in October 2001 that termination was in the best interest of the children, the court found in fact no best-interest inquiry had been made by the court at that time. The court explained, "Not a single thing was done to enlighten the trier of fact as to the best interests of the children. The children's interests were not brought forth through any of the means that our codes provide. And [*Goodarzirad*] stands for the proposition that parties cannot by themselves stipulate to termination of parental rights. If there ever was a case where the parties stipulated to the termination of parent rights and nothing further was done, this was such a case."

## CONTENTIONS

Michael contends (1) he did not stipulate to the termination of Deborah's parental rights and the termination order is therefore not void or otherwise subject to collateral attack; and (2) the failure of the court to follow proper procedures in conducting the inquiry into termination was invited error and, in any event, harmless.[5]

## DISCUSSION

1. *The Trial Court Had Jurisdiction to Decide Deborah's Collateral Attack on the October 2001 Judgment Terminating Her Parental Rights*

■ Deborah contends, because the trial court acted in excess of its jurisdiction in entering the October 2001 termination order, that order is void and properly subject to collateral attack. Although collateral attacks on judgments are disfavored (see, e.g., *Robert J. v. Leslie M.* (1997) 51

---

[5] Both the April 2004 order granting Deborah's motion to set aside the October 2001 termination order and the October 2004 order denying Michael's motion to vacate the set aside order, entered in the family law proceeding subsequent to the judgment of dissolution, are properly appealable as postjudgment orders. (Code Civ. Proc., § 904.1, subd. (a)(2).)

Cal.App.4th 1642, 1647–1648 [59 Cal.Rptr.2d 905]), in some cases, if the court has awarded relief to one of the parties the law declares cannot be granted, as Deborah contends occurred here, that judgment may be collaterally attacked.

Lack of jurisdiction in the "most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties. [Citation.]" (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288 [109 P.2d 942]; *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 196 [25 Cal.Rptr.3d 298, 106 P.3d 958] ["in the absence of subject matter jurisdiction, a trial court has no power 'to hear or determine [the] case.' [Citation.] And any judgment or order rendered by a court lacking subject matter jurisdiction is 'void on its face . . . .' [Citation.]"].) In a broader sense, lack of jurisdiction also exists when a court "make[s] orders which are not authorized by statute." (*Polin v. Cosio* (1993) 16 Cal.App.4th 1451, 1454–1455 [20 Cal.Rptr.2d 714].) " '[I]t seems well settled . . . that when a statute authorizes prescribed procedure, and the court acts contrary to the authority thus conferred, it has exceeded its jurisdiction . . . .' " (*Abelleira*, at p. 290; see *Polin*, at pp. 1455–1457 [judgment awarding custody exceeded statutory authority]; *Goodarzirad, supra,* 185 Cal.App.3d at pp. 1024–1027 [stipulated judgment to terminate paternity was void and subject to collateral attack].)[6]

If the trial court has subject matter jurisdiction to hear or determine a case and personal jurisdiction over the parties, an order or judgment rendered in excess of the court's jurisdiction, such as by its failure to follow fundamental procedures prescribed by statute, remains valid but voidable. (*Neumann v. Melgar* (2004) 121 Cal.App.4th 152, 164 [16 Cal.Rptr.3d 754]; *In re Andres G.* (1998) 64 Cal.App.4th 476, 482–483 [75 Cal.Rptr.2d 285].) A

---

[6] " 'Not every violation of a statute constitutes excess of jurisdiction on the part of a court. The doctrine relied upon by petitioners applies only where the clear purpose of the statute is to restrict or limit the power of the court to act and where the effective enforcement of such restrictions requires the use of the extraordinary writs of certiorari or prohibition. Where, as here, the statute does not restrict the power of the court but merely sets up a condition precedent to the establishment of plaintiff's cause of action, we think the violation of the statutory provision constitutes an error of law rather than excess of jurisdiction.' [Citation.]" (*County of Santa Clara v. Superior Court* (1971) 4 Cal.3d 545, 549 [94 Cal.Rptr. 158, 483 P.2d 774]; accord, *In re Marriage of Goddard* (2004) 33 Cal.4th 49, 57 [14 Cal.Rptr.3d 50, 90 P.3d 1209] [quoting *County of Santa Clara*, at p. 549]; see *Poster v. Southern Cal. Rapid Transit Dist.* (1990) 52 Cal.3d 266, 274 [276 Cal.Rptr. 321, 801 P.2d 1072] [" 'A typical misuse of the term "jurisdictional" is to treat it as synonymous with "mandatory." There are many time provisions, e.g., in procedural rules, which are not directory but mandatory; these are binding, and parties must comply with them to avoid default or other penalty. But failure to comply does not render the proceeding void . . . .' [Citation.]"].)

stipulated judgment or other order in excess of the court's jurisdiction may not be collaterally attacked absent unusual circumstances or compelling policy considerations. (*In re Marriage of Hinman* (1992) 6 Cal.App.4th 711, 718, fn. 2 [8 Cal.Rptr.2d 245].) Thus, appellate courts have repeatedly allowed acts in excess of jurisdiction to stand when the acts were beneficial to all parties and did not violate public policy (*In re Andres G.*, at p. 482; see, e.g., *Cowan v. Superior Court* (1996) 14 Cal.4th 367, 370–376 [58 Cal.Rptr.2d 458, 926 P.2d 438] [trial court allowed defendant to plead guilty to a time-barred lesser included offense]) or when allowing objection would countenance a wholly unacceptable trifling with the courts. (See, e.g., *Kristine H. v. Lisa R.* (2005) 37 Cal.4th 156, 166 [33 Cal.Rptr.3d 81, 117 P.3d 690]; *In re Griffin* (1967) 67 Cal.2d 343, 346–347 [62 Cal.Rptr. 1, 431 P.2d 625] [trial court as a result of defendant's actions revoked probation after expiration of probation period].) On the other hand, appellate courts have voided acts in excess of jurisdiction when the irregularity was too great or when the act violated a comprehensive statutory scheme or offended public policy. (*Goodarzirad, supra*, 185 Cal.App.3d at pp. 1024–1027 [stipulation of parties to deprive court of authority to modify child custody and visitation orders in dissolution proceeding]; *People v. Mendez* (1991) 234 Cal.App.3d 1773, 1778–1784 [286 Cal.Rptr. 216] [reducing felony conviction to misdemeanor and sealing conviction record]; *People v. Blakeman* (1959) 170 Cal.App.2d 596, 598 [339 P.2d 202] [banishment as condition of probation].) Whether the voidable order is enforced depends, in large part, on the degree of the procedural irregularity and whether the court's act violated a comprehensive statutory scheme or offended public policy. (*In re Andres G.*, at p. 483; *Adoption of Matthew B.* (1991) 232 Cal.App.3d 1239, 1269 [284 Cal.Rptr. 18].)

As we discuss below, the termination order exceeded the trial court's jurisdiction and contravenes "the public policy favoring that a child has two parents rather than one." (*Kristine H. v. Lisa R., supra*, 37 Cal.4th at p. 166.) Accordingly, Deborah's collateral attack on that order is not precluded.[7]

---

[7] At oral argument Deborah's newly retained counsel suggested the trial court hearing the parties' family law case in fact lacked subject matter jurisdiction to terminate Deborah's parental rights, in effect arguing such an order may be entered only in a separate proceeding initiated by a petition under Family Code section 7840 et seq. Because it appears no formal judgment had been entered following the October 2001 termination order as required by Family Code section 7894, Deborah's counsel also argued the termination order was not final and therefore remained subject to modification by the trial court whether or not it was void or voidable. In light of our affirmance of the trial court's order of April 2, 2004 invalidating the October 2001 termination of Deborah's parental rights, as a practical matter neither of these arguments would lead to a different result. Accordingly, although we understand why these arguments were raised for the first time at oral argument, we decline to consider them. (See *Trabuco Highlands Community Assn. v. Head* (2002) 96 Cal.App.4th 1183, 1192, fn. 10 [117 Cal.Rptr.2d 842] [court need not consider issue raised at oral argument if inadequately raised in briefs]; *Sunset Drive Corp. v. City of Redlands* (1999) 73 Cal.App.4th 215, 226 [86 Cal.Rptr.2d 209] [same].)

### 2. *The Termination Order Was Impermissibly Based on the Parties' Agreement to Terminate Deborah's Parental Rights*

■ A court cannot enter a judgment terminating parental rights based solely upon the parties' stipulation that the child's mother or father relinquishes those rights. (*Kristine M. v. David P.* (2006) 135 Cal.App.4th 783, 791 [37 Cal.Rptr.3d 748] ["the public policies favoring creation of a father-child relationship as a source of emotional and financial support . . . trump any policy that would favor private ordering of parenthood *after* the birth of a child"]; *Goodarzirad, supra,* 185 Cal.App.3d at p. 1026; *In re Matthew S.* (1988) 201 Cal.App.3d 315, 320 [247 Cal.Rptr. 100].)

■ In *Goodarzirad* the trial court approved a stipulation in a divorce proceeding in which the husband relinquished his custody and visitation rights in return for the wife's waiver of her right to collect all child support, both delinquent amounts currently due and any future support. (*Goodarzirad, supra,* 185 Cal.App.3d at pp. 1023–1024.) After the trial court denied the husband's subsequent motion to vacate the judgment terminating his parental rights, the Court of Appeal reversed, holding the stipulation attempted to divest the court of jurisdiction over the parties' minor children and was, therefore, void on public policy grounds. (*Id.* at pp. 1026–1027.) " 'This continuing jurisdiction is vested in the court, and is to be exercised, in the interests of children. It is their right to have the court hear and determine all matters which concern their welfare and they cannot be deprived of this right by any agreement of their parents. The welfare of children is of interest to the state. The Legislature has fixed the period within which such powers may be exercised by the courts as that of the minority of the children, and it is not within the power of the court to fix a shorter period. In every decree of divorce which has provisions respecting the custody and support of children the law becomes a part thereof and the decree is subject to the further order of the court, whether or not it is so stated. . . .' [Citation.] [¶] 'While parents have a right to contract with each other as to the custody and control of their offspring and to stipulate away their respective parental rights [citation], this right so to stipulate is subject to the control of the court in which the matter affecting the child is pending, and the court is not required to award the custody in conformity with such stipulation.' [Citation.] 'Where the welfare of children is involved as in divorce cases, parents cannot by contract so bind themselves as to foreclose the court from an inquiry as to what that welfare requires.' " (*Id.* at p. 1027; accord, *Kristine M. v. David P., supra,* 135 Cal.App.4th at p. 789 ["The [Uniform Parentage Act] protects the child's right to establish paternity and

obtain support irrespective of the parent's intent to foreclose that right."]; see also *In re Marriage of Lambe & Meehan* (1995) 37 Cal.App.4th 388, 392 [44 Cal.Rptr.2d 641] [*Goodarzirad* and similar cases "convince us that the policy underlying stipulations involving minor children must be extended to adult indigent children"].)

Michael contends the public policy underlying *Goodarzirad* is inapplicable in this case because he did not stipulate to terminate Deborah's parental rights: He did not sign any document agreeing to the termination; he did not attend the hearing on Deborah's motion to terminate; and he did not have any advance notice Deborah intended to move to terminate her parental rights. Thus, Michael argues, there is no basis for the court's finding the termination hearing "was the functional equivalent of a stipulated proceeding/stipulated agreement between the parties."

■ Substantial evidence supports the court's finding the termination hearing was a stipulated proceeding.[8] " 'A stipulation is "[a]n agreement between opposing counsel . . . ordinarily entered into for the purpose of avoiding delay, trouble, or expense in the conduct of the action," [citation] and serves "to obviate need for proof or to narrow [the] range of litigable issues" [citation]' [Citation.] ' "A stipulation in proper form is binding upon the parties if it is within the authority of the attorneys." ' " (*Mileikowsky v. Tenet Healthsystem* (2005) 128 Cal.App.4th 262, 278 [26 Cal.Rptr.3d 831].) Although Michael did not attend the proceeding, clearly he was aware in advance of the October 17, 2001 hearing date that Deborah sought to terminate her parental rights,[9] he agreed with her decision and he authorized his counsel to attend the hearing and ensure the enforceability of the termination order.[10] At the outset of the hearing Michael's counsel stated, "We have not filed any

---

[8] Trial court findings in support of a judgment terminating parental rights under Family Code section 7800 et seq. are subject to substantial evidence review on appeal (*In re Nanette M.* (1990) 219 Cal.App.3d 202, 207 [268 Cal.Rptr. 214]), as are virtually all factual disputes resolved by the trial court. (See *SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 461 [17 Cal.Rptr.3d 96] ["Generally, appellate courts . . . apply the substantial evidence standard to a superior court's findings of fact."], fn. omitted; *In re Marriage of Assemi* (1994) 7 Cal.4th 896, 911 [30 Cal.Rptr.2d 265, 872 P.2d 1190] [standard of review governing ruling upon Civil Procedure § 664.6 motion for entry of judgment enforcing a settlement agreement and determination whether parties entered into a binding settlement of all or part of case is whether ruling supported by substantial evidence].) Accordingly, although Deborah's ex parte application for an order to show cause to modify custody and Michael's motion to vacate were not proceedings under Family Code section 7800, we apply the substantial evidence standard of review to the trial court's factual findings.

[9] Deborah's ex parte application was served on Michael's counsel by messenger on October 10, 2001.

[10] Michael's reliance on *Levy v. Superior Court* (1995) 10 Cal.4th 578 [41 Cal.Rptr.2d 878, 896 P.2d 171] for the proposition that he, not his attorney, must have personally stipulated— either orally before the court or in writing—to something as important and conclusive as the termination of Deborah's parental rights is misplaced. In *Levy* the court held

opposition or paperwork. We do not oppose it. And I'm here to facilitate a record that will allow the motion to be not only granted but enforceable." In fact, Michael's counsel examined Deborah at the hearing on her motion, testing her resolve to terminate her rights. And significantly, when the court announced its findings, it characterized the hearing as a "stipulated proceeding."[11] Although Michael's counsel may not have realized the import of the court's characterization, he did not object it was inaccurate.

Additionally, the same highly experienced retired superior court judge who had granted Deborah's motion to terminate in October 2001 heard Deborah's ex parte application in April 2004 and Michael's October 2004 motion to vacate. That judge was familiar with the history between the parties and fully understood the factual context in which the court had approved the parties' agreement. At the hearing on Michael's motion to vacate, the court explained, "It was an arranged deal from the beginning. The terms of the deal were in flux. They changed. Part of what was happening was that they were changed in a way that Ms. Rowe didn't like. This was not mom and dad saying, 'Hey, let's have a family that we're going to raise.' When you start with an understanding of what went on between Ms. Rowe and Mr. Jackson, you then see what progressed to the October 2001 hearing, and what progressed to the October 2001 hearing was what I would have to find factually was a deemed stipulated hearing, and I do so find. . . . There was never a question in this judge's mind, in my mind, that I was going to have to make a factual decision based upon any evidence that would be produced at that hearing.

---

a litigant must personally sign a written stipulation for settlement of a case to create a settlement enforceable under Civil Procedure Code section 664.6, which provides, " 'If *parties* to pending litigation stipulate, in writing or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement.' " (*Levy,* at p. 580.) *The court's conclusion was based not only on the* "substantial right of the litigants themselves" implicated by a decision to end litigation but also "by the circumstances preceding and surrounding the enactment of section 664.6." (*Id.* at p. 584.) No comparable legislative enactment exists in this case. Moreover, as we discuss in the body of our opinion, it is essentially irrelevant to our analysis whether there was a stipulation between the parties or simply an unopposed motion to terminate parental rights that led the trial court to enter an order without conducting an adequate investigation into the children's best interests.

[11] Consistent with its written findings in support of granting the motion to terminate Deborah's parental rights, the court stated at the hearing, "The petitioner has left the minor children in the respondent's exclusive custody for a period in excess of a year. During that period she has not communicated with the children. She believes it's in the best interest of the minor children that her parental right be terminated. I believe that I should add that the court in this stipulated proceeding needs to consider as the major consideration the best interest of the children. And it is the conclusion of the court based upon what the petitioner has stated that this would be in the best interest of the children. . . . And under these unusual circumstances, I think that the children will benefit by the court granting this motion."

There was never a question in my mind that I was going to have to take notes so that I could make sure that I found the right facts in order to support a decision. It was a preordained hearing. The ruling was preordained. How much of this had been worked out by [counsel] in advance, . . . I don't know. I have no idea that is based in fact. I have a good idea based in reality and based in common sense, but I certainly can't say I have any hard evidence to support it. But there was never a single suspicion that this hearing was going to be anything other than what you might call a gimme. Ms. Rowe was going to come in. She was going to recite the things that she had to recite. [Michael's counsel], representing his client, made sure that everything he thought had to be there was going to be there. He didn't examine her in the sense of trying to have the court come up with a finding contrary to what Ms. Rowe wanted. They were both after the same thing. Ms. Rowe was there seeking termination, and Mr. Jackson was there seeking termination. There is no question about it. So I have to agree with [Ms. Rowe] that this was for all purposes a stipulated hearing, that this was a hearing based upon an agreement of the parties . . . that Ms. Rowe's parental rights would be terminated, and we did it in a manner that was inconsistent with the law."

Substantial evidence supports the court's finding, "If there ever was a case where the parties stipulated to the termination of parental rights and nothing further was done, this was such a case."[12]

■ Even if Michael were correct, however, and he did not effectively stipulate with Deborah for the termination of her parental rights, the result would be no different if, based solely on Deborah's uncontested motion to terminate her parental rights, the trial court had granted the requested termination without first ordering an investigation of the children's circumstances by the Department of Children and Family Services or other appropriate agency as required by Family Code section 7850; considering appointment of counsel for the children pursuant to Family Code section 7861; and actually considering the long-term interest of the children involved. (See *Kristine M. v. David P., supra,* 135 Cal.App.4th at p. 791 ["it is only under specified circumstances, and upon specific findings that include the interests of the

---

[12] The court's discussion of the truncated termination hearing also belies Michael's attempt to distinguish *Goodarzirad, supra,* 185 Cal.App.3d 1020, on the ground the court here found by clear and convincing evidence that termination was in the best interests of the children. That finding was predicated solely on Deborah's testimony in support of her motion. As the court candidly acknowledged, "Not a single thing was done to enlighten the trier of fact as to the best interests of the children." The court's inclusion of the boilerplate recitation it had found by clear and convincing evidence that termination was in the best interests of the children does not redeem an otherwise impermissible termination order based on the parties' stipulation.

child, that a court has authority to terminate parental rights"]; *Neumann v. Melgar, supra,* 121 Cal.App.4th at p. 162 ["Statutes authorizing an action to free a child from parental custody and control are intended foremost to protect the child."]; see Fam. Code, §§ 7800 ["The purpose of this part is to serve the welfare and best interest of a child by providing the stability and security of an adoptive home when those conditions are otherwise missing from the child's life."], 7801 ["This part shall be liberally construed to serve and protect the interests and welfare of the child."].)

The fundamental problem in *Goodarzirad, supra,* 185 Cal.App.3d 1020, was not simply that the trial court had entered an order based on the parties' agreement, but that it did so without itself evaluating what would serve the best interest and welfare of the parties' minor children. (*Id.* at pp. 1026, 1029 ["[Former] Civil Code sections 232 et seq. contain very precise criteria and procedures which must be followed before parental custody and control can be terminated. It is clear that the Legislature wanted these specific procedures followed without deviation from the statutory scheme."; "The foremost interest in termination proceedings is to serve and protect the welfare and interests of the child. [Citation.] The fundamental rights of the parent and child should not be allowed to be tampered with by a confession of judgment which removes all determinations surrounding the propriety of the action."].) Indeed, should a mother and father stipulate to terminate one or both parents' rights, if the court follows all the procedures mandated by the Family Code, orders an independent investigation and then bases its findings of best interest and the order of termination on the investigator's report and other evidence presented at the hearing, it would be difficult to argue either considerations of policy or the analysis or holding of *Goodarzirad* authorizes a collateral attack on the court's judgment. Simply put, it is the court's total abdication of its responsibilities, not the mere fact that the parties agree, that makes a stipulated judgment to terminate parental rights invalid.

### 3. *Deborah's Challenge to the October 2001 Termination Order Is Not Barred by Judicial Estoppel*

The doctrine of judicial estoppel has frequently been invoked to bar a party from contesting the validity of a judgment procured by that party. (*Kristine H. v. Lisa R., supra,* 37 Cal.4th at p. 162; see *In re Griffin, supra,* 67 Cal.2d at p. 347.) Whether estoppel will actually be applied depends on the significance of the procedural irregularities, whether the court's act violated a comprehensive statutory scheme and considerations of public policy.

(*Neumann v. Melgar, supra*, 121 Cal.App.4th at p. 164; *Adoption of Matthew B., supra*, 232 Cal.App.3d at p. 1269.) We agree with Michael that Deborah's actions " ' "trifle with the courts" ' " and to a limited extent also contravene public policy favoring speedy determinations of parentage and "the finality of paternity judgments." (See *Adoption of Matthew B.*, at p. 1269.) Nonetheless, compelling policy considerations militate against applying judicial estoppel here. (*Ibid.*) ■ As explained by the *Goodarzirad* court, "The entire scheme underlying custody decrees is that primary consideration must be given to the welfare of children. [Citation.] The ultimate aim of the court is to serve the best interests and welfare of the minor children. [Citation.] Based on these strong public policy reasons, stipulations between parents involving the minor children which attempt to divest the court of jurisdiction are void and the doctrine of judicial estoppel does not apply." (*Goodarzirad, supra*, 185 Cal.App.3d at p. 1026; see *Neumann*, at p. 164 [refusing to apply principles of waiver or estoppel when trial court ignored procedural protections provided in Fam. Code, § 7800 et seq., which were "all calculated to promote the best interests of the affected children"].)

A central factor in determining whether to apply judicial estoppel to preclude a party from challenging an order based on an agreement determining parentage is whether the agreed-to order promotes or undermines this state's public policy "favoring that a child has two parents rather than one." (*Kristine H. v. Lisa R., supra*, 37 Cal.4th at p. 166; see also *Elisa B v. Superior Court* (2005) 37 Cal.4th 108, 123 [33 Cal.Rptr.3d 46, 117 P.3d 660] ["By recognizing the value of determining paternity, the Legislature implicitly recognized the value of having two parents, rather than one, as a source of both emotional and financial support, especially when the obligation to support the child would otherwise fall to the public."]; Fam. Code, § 3020, subd. (b) [public policy of California is "to assure that children have frequent and continuing contact with both parents after the parents have separated or dissolved their marriage, or ended their relationship . . . except where the contact would not be in the best interest of the child"].) Thus, in *Goodarzirad, supra*, 185 Cal.App.3d at pages 1026 to 1027, the stipulated judgment at issue would have deprived the child of one of his two parents; the Court of Appeal held judicial estoppel did not bar the husband's successful challenge to that order although he had previously agreed to it. In *Kristine H. v. Lisa R., supra*, at page 166, in contrast, the Supreme Court held the biological mother of a child was estopped from attacking the validity of a two-year-old stipulated judgment declaring that she and her lesbian partner were the joint legal parents of the child, which would have deprived the child of one of her two parents following the couple's separation.

Similarly, in *Adoption of Matthew B.*, *supra*, 232 Cal.App.3d at page 1269, the estoppel doctrine was applied to preclude a party (a surrogate) to a stipulated judgment of paternity, which had assured the child had two parents, from challenging the validity of the judgment. And in *In re Marriage of Hinman*, *supra*, 6 Cal.App.4th at page 716, judicial estoppel was invoked to prevent a wife from attacking the validity of a judgment to which she had stipulated as part of dissolution proceedings in which she had listed five minor children of the marriage, including two children who had been born prior to the marriage and had been fathered by the wife's former husband. The parties had stipulated wife and husband would share joint physical and legal custody of all five children, and a judgment was entered. The wife's subsequent attempt to deprive the husband of all custody over the two children fathered by her former husband, based on the argument the stipulated judgment was in excess of the court's jurisdiction because the husband had no biological connection to the children, was rejected as barred by judicial estoppel: "Having initially invoked the court's power to determine custody, [the wife] then *stipulated to a judgment* giving [the husband] joint custody. A party who participates in or consents to a judgment which otherwise would be beyond the court's authority is precluded from attacking it collaterally, absent exceptional circumstances. [Citations.]" (*Ibid.*; see also *Kristine M. v. David P.*, *supra*, 135 Cal.App.4th at p. 791 [public policy favors creation of father-child relationship, as well as mother-child relationship, "as a source of emotional and financial support"].)

"In this case, as in any other child custody or paternity matter, the 'ends of justice' are served when we fulfill our obligation to protect the best interests of the child." (*Robert J. v. Leslie M.*, *supra*, 51 Cal.App.4th at p. 1647 [doctrine of res judicata barred father's action against child's mother seeking declaration of father's nonpaternity notwithstanding father had stipulated to paternity].) Regardless of how objectionable it may be for Deborah to invoke the jurisdiction of the court, obtain the precise relief she requested, and now seek to reverse that action by claiming the court failed to inquire into the best interest of her children, the fact remains the trial court has candidly acknowledged it relied entirely on Deborah's now-recanted declaration and did not inquire on its own into the children's best interest when it entered its order permanently depriving the children of one of their two parents.

### 4. *Because the Court Acted in Excess of its Jurisdiction in Entering the Termination Order, the Harmless Error Doctrine Is Inapplicable*

■ Michael's final argument, based in substantial part on comments made by the trial court at the hearing on Deborah's ex parte application,[13] is that the court's failure to comply with the procedural requirements of the Family Code in October 2001 was at most harmless error because it is unlikely the court would have denied Deborah's request for termination of her parental rights even if it had ordered an independent investigation or considered appointment of counsel for the children.[14] It is generally true the existence of procedural error alone, even in a termination proceeding, is insufficient to set aside an order or judgment; the party challenging the order or judgment must also demonstrate the error was prejudicial, that is, that it is reasonably probable a result more favorable to that party would have been reached in the absence of the error. (Code Civ. Proc., § 475; *In re Marriage of Goddard, supra,* 33 Cal.4th at p. 56 ["the presumption in the California Constitution is that . . . '. . . any error as to any matter of procedure,' is subject to harmless error analysis and must have resulted in a 'miscarriage of justice' in order for the judgment to be set aside"]; see generally *Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069 [232 Cal.Rptr. 528, 728 P.2d 1163].)

This general rule, however, is inapplicable if the trial court has acted in excess of its jurisdiction in granting the relief being challenged: If jurisdictional error has occurred, the resulting judgment or order is "voidable and reversible on appeal even where, as here, it is clear from the record [that no prejudice resulted]." (*In re Marriage of Goddard, supra,* 33 Cal.4th at p. 54; see *In re Jesusa V.* (2004) 32 Cal.4th 588, 624 [10 Cal.Rptr.3d 205, 85 P.3d 2] ["We typically apply a harmless-error analysis when a statutory mandate is disobeyed except in a narrow category of circumstances when we deem the error reversible per se."].) Because the trial court's October 2001 termination order was an act in excess of its jurisdiction—that is, an act in violation of a clear restriction or limitation on the court's power to act and not merely an error of law (see *In re Marriage of Goddard,* at p. 57)—the termination order

---

[13] At the hearing on Deborah's ex parte application the court stated, "And so I'm not sure that I can so easily say that it would have . . . resulted in no different order had the mandatory provision of the statutes been followed. . . . I have a good idea as to what it might have been, but I don't know whether my feeling that nothing would have changed is a substitute for not following what the code requires. . . . Again, when you are looking at children, I think you have to follow what the code requires and not say, well, in my opinion it wouldn't have made any difference if there had been an investigation or if counsel had been appointed for the kids. Again, it may not have ended up differently, and I doubt very honestly whether it would have ended up differently at the time. I seriously doubt it, but I don't know whether that can substitute for following what the law requires."

[14] Michael's related contention that Deborah "invited" the trial court's procedural errors is simply a repetition of his unsuccessful judicial estoppel argument under a different label.

was properly voided without further inquiry into possible prejudice suffered by Deborah or the minor children affected by it.

## DISPOSITION

The portion of the April 2, 2004 order invalidating the October 2001 termination of Deborah Rowe Jackson's parental rights and the October 21, 2004 order denying the motion to vacate the April 12, 2004 order are affirmed. Deborah Rowe Jackson is to recover her costs on appeal.

Johnson, J., and Woods, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 24, 2006, S142191. George, C. J., did not participate therein.