[No. S126945. Aug. 22, 2005.]

KRISTINE H., Plaintiff and Appellant, v.
LISA R., Defendant and Respondent.

## COUNSEL

Honey Kessler Amado and Lynn Langley for Plaintiff and Appellant.

Liberty Counsel, Mathew D. Staver, Rena M. Lindevaldsen and Mary E. McAlister for Kristina Sica as Amicus Curiae on behalf of Plaintiff and Appellant.

Leslie Ellen Shear; Goodman & Metz and Diane M. Goodman for Defendant and Respondent.

Law Offices of Robert S. Scuderi, Robert S. Scuderi; Law Offices of Emanuel Sedacca and Emanuel Sedacca as Amicus Curiae on behalf of Defendant and Respondent.

Shannon Minter, Courtney Joslin; Jennifer C. Pizer and Amber Garza for Children of Lesbians and Gays Everywhere, Equality California, Family Matters, Family Pride Coalition, Growing Generations, Lambda Legal Defense and Education Fund, the National Center for Lesbian Rights, Our Family Coalition, the Pop Luck Club and Southern California Assisted Reproduction Attorneys as Amici Curiae on behalf of Defendant and Respondent.

ACLU Foundation of Southern California, Clare Pastore, Christine Sun, Martha Matthews; ACLU Foundation of Northern California, Alan Schlosser, Tamara Lange; ACLU Foundation of San Diego and Imperial Counties, Jordan Budd, Elvira Cacciavillani; ACLU Foundation, Inc., Romana Mancini; Lesbian and Gay Rights Project, James Esseks; Manatt Phelps & Phillips, Vanessa H. Eiseman; Maxie Rheinheimer Stephens & Vrevich and Darin L. Wessel for the American Civil Liberties Union of Southern California, the American Civil Liberties Union of Northern California, the American Civil Liberties Union of San Diego and Imperial Counties and the American Civil Liberties Union as Amici Curiae on behalf of Defendant and Respondent.

Maxie Rheinheimer Stephens & Vrevich, Darin L. Wessel; Laura J. Maechtlen; and Vanessa H. Eisemann for Tom Homann Law Association, Bay Area Lawyers for Individual Freedom, Lesbian and Gay Lawyers Association of Los Angeles, and Sacramento Lawyers for the Equality of Gays and Lesbians as Amici Curiae on behalf of Defendant and Respondent.

Shannan Wilber; Diane Michelsen; Van Deusen, Youmans and Walmsley and Robert R. Walmsley for Legal Services for Children as Amicus Curiae on behalf of Defendant and Respondent.

Debra Back Marley and Robert C. Fellmeth for Children's Advocacy Institute as Amicus Curiae on behalf of Defendant and Respondent.

Katina Ancar for National Center for Youth Law as Amicus Curiae on behalf of Defendant and Respondent.

Law Offices of Willard K. Halm and Willard K. Halm for Southern California Assisted Reproduction Attorneys, Family Pride Coalition and the Los Angeles Gay and Lesbian Center as Amici Curiae on behalf of Defendant and Respondent.

Alice Bussiere for The Center for Children's Rights at Whittier Law School, The Legal Aid Foundation of Los Angeles, The National Center for Youth Law, The Youth Law Center and Joan Heifetz Hollinger and the Children's Advocacy Project, Boalt Hall as Amici Curiae on behalf of Defendant and Respondent and Minors.

Donna Wickham Furth; Wilke, Fleury, Hoffelt, Gould & Birney and William A. Gould, Jr., for Northern California Association of Counsel for Children, National Association of Counsel for Children and The California Psychological Association as Amici Curiae on behalf of Minors.

Geragos & Geragos, Gregory R. Ellis; and Rebekah A. Fye for The Los Angeles County Bar Association, The San Fernando Valley Bar Association and its Family Law Center, The Family Law Section of the Beverly Hills Bar Association, The Bar Association of San Francisco, The Association of Certified Law Specialists and Women Lawyers Association of Los Angeles as Amici Curiae on behalf of Minors.

Morrison & Foerster, Ruth N. Borenstein and Johnathan E. Mansfield for California NOW, Inc., and California Women's Law Center as Amici Curiae.

## OPINION

**MORENO, J.**—We granted review in this case as well as in *Elisa B. v. Superior Court* (2005) 37 Cal.4th 108 [33 Cal.Rptr.3d 46, 117 P.3d 660], and *K.M. v. E.G.* (2005) 37 Cal.4th 130 [33 Cal.Rptr.3d 61, 117 P.3d 673], to consider the parental rights and obligations, if any, of a woman with regard to a child born to her partner in a lesbian relationship.

The present action arises from a judgment stating that both Kristine H. and her lesbian partner, Lisa R., are the parents of a child born to Kristine H. The judgment was entered pursuant to a stipulation of the parties when Kristine H. was pregnant. The Court of Appeal ruled that the judgment is void but that Lisa R. still may have parental rights as a presumed parent under Family Code section 7611, subdivision (d), and remanded the matter for further proceedings.

We conclude that Kristine is estopped from attacking the validity of the judgment to which she stipulated, and the Court of Appeal therefore erred in reversing the superior court judgment denying Kristine's motion to vacate the judgment.

### FACTS

On or about September 1, 2000, Kristine H. as plaintiff and Lisa R. as defendant jointly filed in superior court a "Complaint to Declare Existence of Parental Rights" that alleged that Kristine was seven months pregnant and Lisa was her "partner."[1] They alleged that "[t]he hospital requires a legal judgment establishing parental rights from this Superior Court in order to properly issue the birth certificate," that the parties are "the only legally recognized parents of said child," and that Lisa "is the legal second

---

[1] In order to protect the confidentiality of the minors, we will refer to the parties by their first names.

mother/parent" of the unborn child. The parties requested a stipulated judgment declaring Kristine and Lisa "the joint intended legal parents" of the unborn child with Kristine being listed on the birth certificate "as mother" and Lisa being listed "in the space provided for 'father.' "

On September 8, 2000, a judgment was filed in superior court declaring that Kristine is the "biological, genetic and legal mother/parent" of the unborn child and shall have joint custody with her "partner" Lisa, that Lisa "is the second mother/parent" of the unborn child and shall have joint custody with Kristine, and ordering that the child's birth certificate list Kristine as "mother" and that Lisa "be listed in the space provided for 'father.' " The judgment states that Kristine and Lisa "are the only legally recognized parents of [the unborn child] and take full and complete legal, custodial and financial responsibility of said child."

The child was born on October 3, 2000. She was given a surname formed by hyphenating Kristine's and Lisa's surnames.

Kristine and Lisa separated in September 2002, when the child was almost two years old.

On December 19, 2002, Kristine filed in the superior court a motion to set aside the stipulated judgment. Kristine declared in support of the motion that she and Lisa "began an intimate and caring relationship" in April 1992. After about six years, Kristine attempted without success to bear a child, engaging the services of a fertility clinic. She later accepted the offer of a male friend to provide his semen for a fee of $500 every three months. The friend agreed in writing that he would not seek custody or visitation rights regarding any resulting child. After about a year of trying, Kristine became pregnant through artificial insemination at home using the friend's semen. Kristine asserted that the stipulated judgment was void because the superior court had lacked subject matter jurisdiction to issue the stipulated judgment because the child had not yet been born.

On December 20, 2002, Lisa filed a separate action for custody of the child.

The superior court denied the motion to vacate the stipulated judgment, ruling that a judgment determining parentage may be entered before the birth of the child. The Court of Appeal reversed on a different ground, ruling that the stipulated judgment is void because "[t]he family court could not accept the parties' stipulation as a basis for entering the judgment of parentage." The court further ruled, however, that Lisa "may be able to establish parentage

under the [Uniform Parentage] Act" as a presumed parent under a gender-neutral application of Family Code section 7611, subdivision (d), which provides that a man is presumed to be a father if "[h]e receives the child into his home and openly holds out the child as his natural child." Holding that a child could have two parents of the same sex, the court remanded the matter to the superior court "to conduct, in accordance with the views expressed herein, such further proceedings and amendment of pleadings as are appropriate in order to resolve the issues of Lisa's parentage and her rights, if any, to visitation and/or custody."

We granted review.

### DISCUSSION

The superior court denied Kristine's motion to vacate the judgment, rejecting Kristine's sole argument that the judgment was void because it had been issued prior to the birth of the child. The Court of Appeal reversed on a different ground, concluding that the judgment was void because it was based upon a stipulation of the parties, stating: "A determination of parentage cannot rest simply on the parties' agreement."

We need not decide, however, whether the stipulated judgment is valid, because we conclude that Kristine is estopped from challenging the validity of that judgment.[2]

Estoppel long has been utilized to prevent a party from contesting the validity of a judgment that was procured by that party. In *Watson v. Watson* (1952) 39 Cal.2d 305 [246 P.2d 19], for example, the plaintiff obtained a divorce decree from his first wife in Nevada and married the defendant, but the defendant filed for divorce a year and a half later. While divorce proceedings were pending, the defendant caused the plaintiff to be arrested for battery. The plaintiff was acquitted of battery and sued the defendant for malicious prosecution. The defendant, however, asserted the former defense that the plaintiff was precluded from suing the defendant for a tort committed during the marriage. (See *Peters v. Peters* (1909) 156 Cal. 32 [103 P. 219], overruled in *Self v. Self* (1962) 58 Cal.2d 683 [26 Cal.Rptr. 97, 376 P.2d 65].) The parties' marriage later was annulled on the ground that the plaintiff's Nevada divorce from his first wife was invalid, rendering the plaintiff's marriage to the defendant bigamous and void.

---

[2] We address only whether Kristine is estopped from challenging the validity of the judgment. Nothing we say affects the rights or obligations of third parties, whatever they may be.

The plaintiff in *Watson* asserted that the rule precluding persons from suing their spouses for torts committed during marriage did not apply, because the marriage was bigamous and, thus, void from its inception. The plaintiff asserted, in essence, that there had been no marriage, because the divorce decree he had obtained in Nevada was invalid. This court held that it was unnecessary to determine whether the parties were legally married, because the plaintiff was estopped from denying the validity of the Nevada divorce. (*Watson v. Watson, supra*, 39 Cal.2d 305, 307.) The court relied upon the decision in *Rediker v. Rediker* (1950) 35 Cal.2d 796, 805 [221 P.2d 1], for the proposition that " 'the validity of a divorce decree cannot be contested by a party who has procured the decree or a party who has remarried in reliance thereon or by one who has aided another to procure the decree so that the latter will be free to marry.' " (*Watson v. Watson, supra*, 39 Cal.2d at p. 307; see *Spellens v. Spellens* (1957) 49 Cal.2d 210, 220–221 [317 P.2d 613]; *Dietrich v. Dietrich* (1953) 41 Cal.2d 497, 505 [261 P.2d 269].)

In *Harlan v. Harlan* (1945) 70 Cal.App.2d 657 [161 P.2d 490], the plaintiff husband had assisted the defendant in obtaining from Mexico a "mail order" divorce from her first husband, who lived in Cuba, so that the plaintiff and the defendant could be married. The divorce was invalid, because neither the defendant nor her first husband resided in Mexico. Later, the plaintiff moved to annul his marriage to the defendant on the grounds that the marriage was invalid because the defendant was already married and had not been divorced. Although recognizing that the defendant's "mail order" divorce was invalid, the Court of Appeal held that the plaintiff was "not in a position to take advantage of the invalidity of the Mexican divorce," having helped the defendant to obtain it and having enjoyed its benefits. (*Id.* at p. 661.) The court observed: "His interest then was to procure the result which he now seeks to nullify, after having lived with defendant as husband and wife for over twelve years. That the sweet may have turned sour does not make it conscionable that the plaintiff should be allowed now to undo what his own hand and mind had so much to do in creating. Plaintiff is therefore not in a position to question the validity of defendant's divorce. This is on the principle . . . 'that one "with full knowledge of the facts shall not be permitted to act in a manner inconsistent with his former position or conduct to the injury of another." [Citations.] Another way of stating the same general principle (applicable directly to the instant case) is that one who has invoked the exercise of a jurisdiction within the general powers of the court cannot seek to reverse its orders upon the ground of lack of jurisdiction. "The principle opposing such action is one of estoppel in the interest of a sound administration of the laws whereby the regularity or even validity of an act

procured by one himself cannot be raised—not that the act is valid, for it may not be, and estoppel does not make valid the thing complained of, but merely closes the mouth of the complainant." ' " (*Id.* at pp. 661–662.)

In *In re Marriage of Recknor* (1982) 138 Cal.App.3d 539 [187 Cal.Rptr. 887], the husband married the wife before her divorce was final in her previous marriage. Fifteen years later, the wife petitioned for dissolution of the marriage, and the husband responded by contending, in part, that he could not be ordered to pay spousal support and attorney fees because the marriage was void. The wife testified that she became pregnant with the husband's child shortly after she had filed for divorce, and that the husband had insisted that they get married before the child was born even though they knew her divorce was not final. The Court of Appeal upheld the superior court's orders that the husband pay spousal support and attorney fees. Relying upon our decision in *Spellens v. Spellens, supra,* 49 Cal.2d 210, 220–221, the court recognized that although the marriage may not have been valid, the husband was estopped from challenging its validity, stating: "In this case, Ralph was properly estopped [from denying] that he was validly married to Eve. He went through a formal marriage ceremony with her, knowing that her divorce was not final, and continued to live with her as her husband for 15 years, during which time they had two children. Further, Ralph waited almost 15 years to attempt to assert the invalidity of his marriage to Eve." (*Recknor, supra,* at p. 547.)

■ The estoppel doctrine was applied to preclude a party to a stipulated judgment of paternity from challenging its validity in *Adoption of Matthew B.* (1991) 232 Cal.App.3d 1239 [284 Cal.Rptr. 18]. In that case, a married couple arranged with a surrogate mother to have her artificially inseminated with the husband's semen. After the baby was born, the surrogate and the husband stipulated to entry of a judgment of paternity declaring the husband to be the father, and the surrogate permitted the wife to adopt the child. Ten months later, the surrogate petitioned to withdraw her consent to the adoption and, eight months after that, moved to vacate the judgment of paternity. The Court of Appeal held that the surrogate was estopped from challenging the validity of the judgment to which she had stipulated. (*Id.* at p. 1269.) After noting that the superior court had subject matter jurisdiction to issue the judgment of paternity (*id.* at pp. 1268–1269), the Court of Appeal held: "[E]ven were we to assume that the entry of judgment was an act in excess of the trial court's jurisdiction, [the surrogate]'s execution of the stipulation estops her from urging this point on appeal. Where a court has subject matter jurisdiction, a party's request for or consent to action beyond the court's statutory power may estop the party from complaining that the court's action

exceeds its jurisdiction. [Citation.] Whether estoppel applies 'depends on the importance of the irregularity not only to the parties but to the functioning of the courts and in some instances on other considerations of public policy.' [Citation.] Given [the surrogate]'s stipulation to a judgment establishing [the husband]'s paternity and her designation of [the husband] as [the child]'s natural father in numerous documents, including the birth certificate and the petition to withdraw consent, to entertain her attack on the paternity judgment would impermissibly permit her ' ". . . to trifle with the courts." [Citation.]' [Citation.] It would also contravene the public policy favoring the finality of paternity judgments . . . , the policy in favor of speedy determinations of paternity, and the policy that 'abhors bastardy proceedings . . . .' [Citation.]" (*Id.* at p. 1269, fns. omitted.)

In *In re Marriage of Hinman* (1992) 6 Cal.App.4th 711 [8 Cal.Rptr.2d 245], the wife petitioned for dissolution of her marriage of over seven years, listing five minor children of the marriage, including two children who had been born prior to the marriage and had been fathered by the wife's former husband. The parties stipulated that the wife and husband would share joint physical and legal custody of all five children, and a judgment was entered. Two months later, the wife moved to strip the husband of all custody over the two children fathered by her former husband, arguing that the judgment was in excess of the court's jurisdiction because the husband had no biological connection to the children. The Court of Appeal held that the wife could not attack the validity of the judgment to which she had stipulated: "Here, [the wife] herself invoked the jurisdiction of the court by alleging in her petition that both [children] were minor children 'of the marriage.' That allegation 'confers subject matter jurisdiction upon the court to determine custody, a jurisdiction which does not vanish even if later it is shown there are no such children.' [Citations.] [¶] Having initially invoked the court's power to determine custody, [the wife] then *stipulated to a judgment* giving [the husband] joint custody. A party who participates in or consents to a judgment which otherwise would be beyond the court's authority is precluded from attacking it collaterally, absent exceptional circumstances. [Citations.]" (*Id.* at p. 716.)

We need not, and do not, therefore, determine whether the stipulated judgment entered into by Kristine and Lisa is valid; we hold only that Kristine may not now challenge the validity of that judgment. (11 Witkin, Summary of Cal. Law (9th ed. 1990) Husband and Wife, § 110, p. 130 ["Application of the estoppel doctrine does not give the decree any validity, but merely prevents certain persons from achieving inequitable ends by

attacking it."].) Kristine invoked the jurisdiction of the superior court to determine the parentage of the unborn child under the Uniform Parentage Act. The court thus had subject matter jurisdiction.[3] Family Code section 7630, subdivision (b), provides that "Any interested party may bring an action at any time for the purpose of determining the existence or nonexistence of the father and child relationship presumed under subdivision (d) or (f) of Section 7611." Family Code section 7633 provides that "An action under this chapter may be brought before the birth of the child." ■ The chapter to which section 7633 refers governs the determination of both the father and child relationship and the mother and child relationship. Kristine then stipulated to entry of a judgment naming Lisa as the child's other parent, obtained a birth certificate naming Lisa as the child's other parent, and coparented the child with Lisa for nearly two years. ■ We held in the companion case of *Elisa B. v. Superior Court, supra,* 37 Cal.4th at page 119, that the superior court can determine that a child has "two parents, both of whom are women." The superior court, thus, had subject matter jurisdiction to issue the judgment establishing parentage in the present case.

■ Given that the court had subject matter jurisdiction to determine the parentage of the unborn child, and that Kristine invoked that jurisdiction, stipulated to the issuance of a judgment, and enjoyed the benefits of that judgment for nearly two years, it would be unfair both to Lisa and the child to permit Kristine to challenge the validity of that judgment. To permit her to attack the validity of the judgment she sought and to which she stipulated would " ' "trifle with the courts." ' " (*Adoption of Matthew B., supra,* 232 Cal.App.3d 1239, 1269.) ■ It would also contravene the public policy favoring that a child have two parents rather than one. (*Elisa B. v. Superior Court, supra,* 37 Cal.4th at p. 123.) Kristine, therefore, is estopped from challenging the validity of the stipulated judgment. (*Adoption of Matthew B., supra,* 232 Cal.App.3d at p. 1269.)

---

[3] "Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties. [Citation.] Familiar to all lawyers are such examples as these: A state court has no jurisdiction to determine title to land located outside its territorial borders, for the subject matter is entirely beyond its authority or power. [Citation.] A court has no jurisdiction to adjudicate upon the marital status of persons when neither is domiciled within the state. [Citations.] A court has no jurisdiction to render a personal judgment against one not personally served with process within its territorial borders, under the rule of *Pennoyer* v. *Neff,* 95 U.S. 714 [24 L.Ed. 565]. [Citation.] A court has no jurisdiction to hear or determine a case where the type of proceeding or the amount in controversy is beyond the jurisdiction defined for that particular court by statute or constitutional provision. [Citation.] Other examples of lack of jurisdiction in this fundamental sense will readily occur." (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288 [109 P.2d 942].)

## Disposition

The judgment of the Court of Appeal is reversed.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., and Chin, J., concurred.