Filed 6/18/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>JENNIFER DeJONGH et al.,<br><br>      Defendants and Appellants. | B255784<br><br>(Los Angeles County<br> Super. Ct. No. BA332537) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert J. Perry, Judge.  Affirmed.

The Severo Law Firm and Michael V. Severo for Defendants and Appellants.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., Elaine F. Tumonis and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

Defendants Jennifer Lopez DeJongh (Mrs. DeJongh) and her husband George DeJongh (Mr. DeJongh) were convicted in a court trial of three counts of child custody deprivation. (Pen. Code, § 278.5, subd. (a).)[1] Defendants contend that the underlying order of the family law court did not confer custody or visitation rights on the paternal grandparents and thus there was no violation of section 278.5.[2] We find that the family law court order conferred visitation rights on the parental grandparents and therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

*Factual Background*

Mrs. DeJongh has three minor children. The children's father, Brian Miller, Sr. (Miller), is not a party to this case. In November 2007, Mrs. DeJongh and Miller entered into a settlement agreement in family law court, which constituted an order of the court. The order provided that they would share joint legal custody of the children and that neither would change the children's residence from Los Angeles County "without the prior written consent of the other or prior order of court."

The family law court order required Mrs. DeJongh to take the children to the paternal grandparents' home on November 18, 2007 for an "extended visit." The order stated that "[t]he express purpose of this visit will be to assist normalization

---

[1]     Unspecified statutory references will be to the Penal Code.

[2]     As we explain in further detail below, this is the second time defendants' case is before us.

[3]     The facts are taken from the preliminary hearing transcript, to which the parties stipulated as setting forth the facts in the court trial.

2

with the minors and reunification with both parents." The order provided that Miller's visits would be supervised as arranged with a reunification counselor, although no time frame was set forth. The order specified that Mrs. DeJongh's visits would begin on November 25, 2007, on Tuesdays, Thursdays, and Saturdays, with the reunification counselor for the first six visits. "Thereafter, her visits will be supervised by a private monitor until further order of court or stipulation of parties." A hearing to review custody, visitation, and reunification was scheduled for February 6, 2008.

The paternal grandparents, Gary and Cathleen Miller, were not parties to the family law court proceedings. However, on the date the settlement agreement was signed, Miller's attorney called them to ask if they would be willing to take the children into their home "for an extended period for the purpose of normalizing the children with their mother and father under supervised visits until the court determined otherwise." Gary Miller was unsure how long the extended visit was supposed to last, stating that the extended period could have meant 90 days or two years. However, the trial court in the prior appeal reasoned that the order contemplated at least a week and most likely longer because Mrs. DeJongh was ordered to bring the children on November 18, 2007, her first visit was not ordered until November 25, and the order plainly described it as an "extended visit."

Mrs. DeJongh failed to comply with the family law court order requiring her to take the children to the paternal grandparents' home in November 2007 for the extended visit. Instead, defendants took the children to Mexico. The paternal grandparents spoke with Los Angeles County Sheriff Detective Mark Martinovich, who began an investigation in 2007. The grandparents did not know where the grandchildren were and did not see them again until August 2011 at an FBI office.

3

On August 10, 2011, Detective Martinovich learned from the FBI that defendants and the three children had been found in Mexico. Mexican authorities released defendants to United States authorities at the United States/Mexico border. The grandchildren were released to the paternal grandparents.

Mr. DeJongh waived his *Miranda* rights and told Detective Martinovich that Mrs. DeJongh thought the family proceedings were not "going as they planned," and she was afraid she would lose custody of the children. Defendants therefore decided to take the children to Mexico, where they changed the children's and Mrs. DeJongh's first and last names. Mr. DeJongh knew they were violating the court order.

*Procedural Background*

Defendants were charged with three counts of child custody deprivation, in violation of section 278.5, subdivision (a). Each count alleged that the paternal grandparents were the victims who were deprived of their visitation rights.

Defendants moved to dismiss on the basis that the paternal grandparents did not have a right to custody or visitation. The trial court denied the motion. Defendants entered pleas of nolo contendere, and the trial court issued a certificate of probable cause to permit them to appeal the denial of their motion. We reversed the judgment and remanded to permit defendants to withdraw their pleas because, by pleading nolo contendere, they "implicitly conceded that the People's theory that the paternal grandparents had protectable visitation rights with which they criminally interfered was legally sound and factually sufficient."

On remand, defendants withdrew their pleas, waived their right to a jury trial, and consented to a court trial on stipulated facts from the preliminary hearing transcript. The parties stipulated that the People's theory was that the paternal

grandparents were the victims of the offense and that their right to visitation stemmed from the November 2007 court order. The court found that defendants maliciously deprived the paternal grandparents of their right to visitation and so found them guilty of all three counts. The court suspended imposition of sentence and placed defendants on five years of formal probation.

## DISCUSSION

Defendants contend that their convictions cannot stand because the family law court order did not confer a right of visitation on the paternal grandparents. We disagree.[4] The court order explicitly required Mrs. DeJongh to take the children to the paternal grandparents for an "extended visit," and, contrary to defendants' arguments, the statute does not require the grandparents to have been a party to the family court proceedings.

Section 278.5, subdivision (a) provides that "Every person who takes, entices away, keeps, withholds, or conceals a child and maliciously deprives a

---

[4] The People contend that we should dismiss the appeal pursuant to the disentitlement doctrine, "a doctrine by which an appellate court may stay or dismiss an appeal by a party who has refused to obey the superior court's legal orders. [Citation.]" (*In re E.M.* (2012) 204 Cal.App.4th 467, 474.) "In criminal cases, it is often applied when the appellant is a fugitive from justice. [Citation.] In dependency cases, the doctrine has been applied only in cases of the most egregious conduct by the appellant, which frustrates the purpose of dependency law and makes it impossible to protect the child or act in the child's best interests. [Citations.]" (*Ibid.*) Although the doctrine has been applied in cases in which the appellant has violated orders other than the one from which the appeal has been taken (see *id.* at p. 477 [discussing cases]), we decline to apply it here because defendants are no longer in violation of the family law court order and are not fugitives from justice in the case from which the appeal has been taken. (See *People v. Puluc-Sique* (2010) 182 Cal.App.4th 894, 898 ["Appellate disentitlement is, fundamentally, a doctrine based on forfeiture: a defendant who escapes or otherwise flees the authorities gives up the right to challenge a conviction or sentence while refusing to abide by its consequences."].)

5

lawful custodian of a right to custody, or a person of a right to visitation, shall be punished by imprisonment in a county jail not exceeding one year . . . or by imprisonment pursuant to subdivision (h) of Section 1170 for 16 months, or two or three years . . . ." For purposes of this section, a "right to custody" means "the right to the physical care, custody, and control of a child pursuant to a custody order." (§ 277, subd. (e).) A custody order is defined as "a custody determination decree, judgment, or order issued by a court of competent jurisdiction, whether permanent or temporary, initial or modified, that affects the custody or visitation of a child, issued in the context of a custody proceeding." (*Id.*, subd. (b).) "'Visitation' means the time for access to the child allotted to any person by court order." (*Id.*, subd. (h).) "'Person' includes, but is not limited to, a parent or an agent of a parent." (*Id.*, subd. (i).)

Defendants' actions in taking the children to Mexico instead of complying with the order to take the children to the paternal grandparents for an extended visit clearly constitute a violation of section 278.5. The family law court order to which Mrs. DeJongh and Miller stipulated required Mrs. DeJongh to take the children to the paternal grandparents' home for an extended visit.

The statute merely requires that the defendant deprive "*a person* of a right to visitation," (§ 278.5, subd. (a)) and "visitation" simply means "the time for access to the child allotted to *any person* by court order." (§ 277, subd. (h), italics added.) Thus, contrary to defendants' argument, the statute does not require the victim of the offense to have been a party to the underlying action. It only requires that the person have been allotted visitation by court order. Nothing in the plain language of either section 278.5 or 277 supports defendants' contention that section 278.5 is violated only where the victim who was deprived the right to visitation was a party to the underlying family law proceedings.

6

We further disagree with defendants' contention that this plain reading of the statute violates *Troxel v. Granville* (2000) 530 U.S. 57. *Troxel* is inapposite. There, the Supreme Court addressed the constitutionality of a Washington state statute that permitted "'[a]ny person' to petition a superior court for visitation rights 'at any time,' and authorizes that court to grant such visitation rights whenever 'visitation may serve the best interest of the child,'" (*id.* at p. 60) with no deference given to the parent's estimation of the child's best interest. (*Id.* at p. 67.) After the paternal grandparents in *Troxel* filed a petition to obtain visitation rights with their grandchildren, the superior court ordered visitation more extensive than that desired by the mother. The Supreme Court held that the statute, as applied in that case, unconstitutionally infringed on the parent's fundamental right to make decisions regarding her children's care, custody, and control. (*Id.* at pp. 66-67.)

Unlike *Troxel*, the grandparents here did not petition the family court seeking visitation rights in contravention to Mrs. DeJongh's wishes. To the contrary, Mrs. DeJongh stipulated to the extended visit with the grandparents.

The People thus contend that defendants should be estopped from challenging the visitation provision in the family law court order under the invited error doctrine. We agree. *Kristine H. v. Lisa R.* (2005) 37 Cal.4th 156, cited by the People, is instructive. There, a pregnant woman and her partner stipulated to a judgment that declared both women were parents of the child. After the couple separated, the biological mother tried to challenge the validity of the stipulated judgment. The California Supreme Court held that she was estopped from challenging its validity, reasoning that she had invoked the court's jurisdiction, stipulated to the issuance of the judgment, and enjoyed the benefits of that judgment for nearly two years. (*Id.* at p. 166.) "To permit her to attack the validity of the judgment she sought and to which she stipulated would ""trifle with the

courts.'''" [Citation.]" (*Ibid.*) Similarly here, Mrs. DeJongh stipulated to the family law court order sending the children to the paternal grandparents' for an extended visit, during which time she and Miller were to have monitored visits. The purpose of the extended visit was to help the family by "assist[ing] normalization with the minors and reunification with both parents." Mrs. DeJongh may not now argue that the family law court did not have authority to order the extended visit to which she stipulated.

For similar reasons, we also reject defendants' contention that visitation rights could only have been given to the paternal grandparents under Family Code section 3104. Under Family Code section 3104, a court may grant reasonable visitation rights to a grandparent who petitions the court for such rights and meets the requirements under the statute.[5] The statute does not prohibit a parent from *stipulating* to a grant of visitation rights to grandparents.

Defendants' reliance on *In re Marriage of Harris* (2004) 34 Cal.4th 210 therefore is unavailing. In *Harris*, "[t]he superior court granted extensive visitation rights to the paternal grandparents of a five-year-old girl with the approval of the father but over the objection of the mother, who has sole custody of the child." (*Id.* at p. 214.) The California Supreme Court held that Family Code section 3104 controlled. "Because the mother had sole custody of the child and objected to grandparent visitation, Family Code section 3104, subdivision (f), imposed a rebuttable presumption affecting the burden of proof that grandparent visitation was not in the child's best interest." (*Ibid.*)

*Harris* is inapposite. We reiterate that the paternal grandparents here did not need to petition the court for visitation rights under Family Code section 3104

---

[5] The court must find a preexisting relationship that has engendered a bond such that visitation is in the child's best interest and must balance the interest in visitation against the right of the parents. (Fam. Code, § 3104, subd. (a).)

because the stipulation *to which Mrs. DeJongh agreed* gave Mrs. DeJongh and Miller joint legal custody and explicitly placed the children with the grandparents for an "extended visit." (See *Bookstein v. Bookstein* (1970) 7 Cal.App.3d 219, 221-223 [rejecting the father's challenge to visitation rights granted to maternal grandparents in stipulated orders]; *Montenegro v. Diaz* (2001) 26 Cal.4th 249, 257 ["The Legislature has adopted a comprehensive statutory scheme designed to promote the mediation of all custody disputes. In doing so, the Legislature has indicated a strong preference for resolving custody disputes *outside the courtroom* through parental stipulations, on the apparent belief that cooperation is more likely to produce a sound resolution than litigation."].)

Defendants argue that the paternal grandparents did not petition for visitation rights under Family Code section 3104, but that is precisely the point – they did not petition for visitation against her wishes because she stipulated to the visitation. Thus, there is no question that the family law court properly granted visitation rights to the paternal grandparents.

Finally, defendants cite *Barber v. Superior Court* (1991) 1 Cal.App.4th 793, 795, which held that the defendants' conduct did not, as a matter of law, constitute a violation of section 278.5. The dependency court order in *Barber* placed the children in the home of the mother, under the supervision of Child Protective Services. The parents left the state with the children and were charged with violating section 278.5. The court rejected the People's argument that the order granting Child Protective Services supervision over the care and custody of the minors gave the agency "physical custody" for purposes of section 278.5. (*Id.* at pp. 796-797.)

Unlike *Barber*, in which the order did not give the agency physical custody of the children for purposes of section 278.5, the order here, stipulated to by Mrs.

9

DeJongh, explicitly gave the paternal grandparents a right to visitation.  The visitation thus comes within the plain language of section 277, which defines "visitation" as "the time for access to the child allotted to any person by court order."  Defendants thus deprived the parental grandparents of a right to visitation within the meaning of section 278.5.

## DISPOSITION

The judgment is affirmed.

**CERTIFIED FOR PUBLICATION**

WILLHITE, J.

We concur:

EPSTEIN, P. J.

COLLINS, J.