Filed 1/23/26  Marriage of Kilpatrick and Hunt CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re the Marriage of LUKE KILPATRICK and SARAH HUNT. | |
| LUKE KILPATRICK,<br><br>    Appellant,<br><br>v.<br><br>SARAH HUNT,<br><br>    Respondent. | A171885<br><br>(San Mateo County<br>Super. Ct. No. 20-FAM-00069) |

This is an appeal from a trial court order, in family law proceedings, denying a request for a judicial determination that a 2023 stipulation and order (hereinafter, 2023 Stipulated Order) is void as a matter of law.[1] Appellant, Luke Kilpatrick (father), contends the trial court acted ultra vires by delegating certain powers to a "private 'mediator' " pursuant to the 2023 Stipulated Order, including the powers to make decisions and orders relating to child custody, to allocate mediator fees, and to issue sanctions.  Father also contends the court erred by denying his ancillary request for removal of the private mediator on grounds of bias.  We affirm.

---

[1] The full title of the 2023 Stipulated Order is "Stipulation and Order Re Custody and Visitation Following a Child Custody Evaluation."

1

## PROCEDURAL AND FACTUAL BACKGROUND

Father and respondent, Sarah Hunt (mother), married in November 2015. On January 14, 2018, their sole child, M.K. (minor), was born. Their marriage was dissolved by judgment entered on September 9, 2020.

In seeking dissolution of their marriage, parents executed a marital settlement agreement (MSA) on August 21, 2020. The MSA incorporates by reference a stipulation and order regarding pendente lite custody and visitation entered on April 1, 2020. Under this April 2020 stipulation and order, parents were granted joint legal custody of minor, mother was granted sole physical custody of minor, and father received regular visitation with minor occurring every other weekend from Friday at 5 p.m. to Sunday at 7 p.m.

On August 28, 2023, the trial court entered a new stipulation and order that had been agreed to by parents and their respective counsel, to wit, 2023 Stipulated Order which is the subject of this appeal. Relevant here, the 2023 Stipulated Order required parents to retain a "Recommending Mediator" (RM) who "shall provide child-focused dispute resolution, parent education, dispute assessment, mediation, conflict and communication management, and recommendations and decision-making on unresolved disputed issues regarding the child." The 2023 Stipulated Order also authorized the RM to do the following:

(1) "The RM may make decisions or orders regarding conflict between the parents, which do not affect the Court's exclusive jurisdiction to determine the fundamental custody and visitation issues."

(2) "If either party requests a change to the provisions outlined in an existing order regarding child-related issues, the party requesting the change must demonstrate to the RM that a change in the family situation has

2

occurred, which warrants changing the specific provision in an existing order."

(3) "The RM shall have the authority to limit an uncooperative parent's custodial time with the child to the first and third weekends each month from 6:00 PM Friday to 6:00 PM Sunday until the offending parent complies with the RM."

(4) "[T]he RM shall be permitted to authorize sanctions against either party who has failed to respond or use OFW [Our Family Wizard] per the current court orders."

(5) "The RM will determine the final fee allocation based on the issues raised and the parties' actions and communications."

However, the 2023 Stipulated Order also makes clear: "The RM shall *not* have the authority to change the custodial designation of legal or physical custody established in the current Order. Substantial changes to the parenting plan arrangements are reserved for the San Mateo County Superior Court." (Italics added.) The 2023 Stipulated Order further provides that it is "intended to be a long-term custody plan which may be modified only upon the written stipulation of the parties or a showing of a significant change of circumstances. (*Montenegro v. Diaz* (2001) 26 Cal.4th 249)." (Boldface omitted.)

In accordance with the 2023 Stipulated Order, parents initially retained Brenda Farrell as the RM.[2] However, on February 13, 2024, father filed a request for order (RFO) asking the court to remove Farrell as the RM on grounds of bias and requesting that he be permitted to select a new list of

___

[2] The 2023 Stipulated Order provides a procedure for choosing an RM by which mother identifies three or more suitable individuals and father makes the final choice.

3

potential replacement candidates. However, Farrell resigned as the RM before the court heard father's RFO.

On July 10, 2024, at the hearing on father's RFO, the court denied father's request to select the names for the new RM and ordered mother to provide the list of candidates. On the same day, father filed another RFO, seeking to remove from the 2023 Stipulated Order the requirement of having an RM, contending the requirement led to conflict. A hearing was set for October 25, 2024, regarding whether there was a conflict.

Nonetheless, on August 7, 2024, the parties entered into a new agreement to retain attorney Debra Vaniman Crawford as the new RM. This agreement incorporated the 2023 Stipulated Order's language regarding the RM's authority to make decisions and orders. (See pp. 2–3, *ante*.)

On September 16, 2024, father filed a declaration and memorandum of points and authorities in support of his RFO. In this briefing, his attorney raised the new argument that the 2023 Stipulated Order should be modified to remove the requirement of private mediation because such requirement was void as a matter of public policy. Father also raised concerns about Crawford's impartiality and complained that she engaged in "ex parte communications" with mother's attorney in violation of Family Code section 216. Mother opposed the RFO.

On November 4, 2024, after the contested hearing, the trial court issued its findings and order denying father's RFO. Specifically, the court found that the identified terms of the 2023 Stipulated Order were "valid and enforceable." The court further found that ex parte communications between the RM and counsel were not prohibited by the mediation agreement or by Family Code section 216, which was inapplicable. Moreover, the court found

4

the ex parte communications did not suggest the RM was biased against father or acting outside the scope of her authority.[3]

On November 25, 2024, father filed a timely notice of appeal of the November 4, 2024 findings and order.

## DISCUSSION

A trial court's determination of whether a judgment is void is reviewed de novo; its decision of whether or not to set aside a void order is reviewed for abuse of discretion. (*Braugh v. Dow* (2023) 93 Cal.App.5th 76, 86; *Kremerman v. White* (2021) 71 Cal.App.5th 358, 369.)

### I. *Father is estopped from challenging the validity of the 2023 Stipulated Order.*

Father contends the 2023 Stipulated Order is invalid as a matter of law because the trial court lacked jurisdiction to delegate its authority to the RM to " 'make decisions or orders,' " authorize sanctions, allocate costs between the parties, or "require the demonstration of a change of circumstances to a mediator prior to seeking relief from the court [citation], without following the formalities of appointing a special master or private judge."

We conclude that father is estopped from challenging the 2023 Stipulated Order as void and, as such, we need not decide whether any particular term of the order is valid.

"Code of Civil Procedure section 664.6 . . . provides that 'if parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally on the record before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the

---

[3] The court also made other findings relating to custody and visitation that are not challenged on appeal.

5

court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement.' " (*In re Marriage of Assemi* (1994) 7 Cal.4th 896, 900, fn. omitted (*Assemi*).)

Moreover, a stipulated judgment or order entered pursuant to Code of Civil Procedure section 664.6 may govern, as here, issues arising upon the dissolution of marriage. "[P]arties to a marital dissolution action may opt out of litigation by agreeing to an alternative dispute resolution mechanism that does not involve all of the formalities required of an adversarial system of justice. Private mediation, like nonjudicial arbitration, offers a speedy and less expensive approach to resolution of issues arising from marital dissolution. As recognized by the California Supreme Court, 'mediation [is] a form of alternative dispute resolution encouraged and, in some cases required by, [*sic*] the Legislature.' [Citation.] 'Implementing alternatives to judicial dispute resolution has been a strong legislative policy since at least 1986. In that year the Legislature enacted provisions for dispute resolution programs, *including but not limited to mediation, conciliation, and arbitration*, as alternatives to formal court proceedings which it found to be "unnecessarily costly, time-consuming, and complex" as contrasted with noncoercive dispute resolution. (Bus. & Prof., §§ 465, 466.)' [Citation.]" (*In re Marriage of Woolsey* (2013) 220 Cal.App.4th 881, 892, 1st bracketed insertion added; see *Assemi, supra*, 7 Cal.4th at pp. 906–907 ["as an expeditious means of resolving disputed issues, trial courts frequently appoint a subordinate court officer to whom is delegated, pursuant to the stipulation of the parties, the authority to render binding factual findings or judicial determinations"].)

This is exactly what occurred here: The parties devised an alternative dispute resolution mechanism, set forth in the 2023 Stipulated Order, for

6

resolving certain issues relating to custody and visitation out of court with assistance from the RM.

Yet, despite agreeing to the 2023 Stipulated Order over two years ago and presenting it to the court for signature, father now insists the Order violates public policy and should be invalidated. He claims that because a court's jurisdiction over the custody of a child is based on protecting the child's welfare, the court's authority " '*cannot be limited or abridged by the contract of the parties*,' " citing *In re Marriage of Goodarzirad* (1986) 185 Cal.App.3d 1020 (*Goodarzirad*).

*Goodarzirad, supra*, is distinguishable. There, the parties entered into a stipulation pursuant to which the father waived all rights to custody and visitation with the child and agreed to execute all necessary documents to free the child from his parental control. (185 Cal.App.3d at pp. 1023–1024.) The reviewing court held that, based on the strong public policy favoring court oversight of the termination of parental custody and control, "stipulations between parents involving the minor children which attempt to divest the court of jurisdiction are void and the doctrine of estoppel does not apply." (*Id.* at p. 1026.)

Here, the 2023 Stipulated Order does not divest the trial court of subject matter jurisdiction over the parties' custody proceedings. To the contrary, the order expressly provides: "The RM may make decisions or orders regarding conflict between the parents, which do not affect the Court's exclusive jurisdiction to determine the fundamental custody and visitation issues." It further states: "The RM shall not have the authority to change the custodial designation of legal or physical custody established in the current Order. Substantial changes to the parenting plan arrangements are reserved for the San Mateo County Superior Court." Finally, under the 2023

Stipulated Order, the parties' long-term custody plan "may be modified only upon the written stipulation of the parties or a showing of a significant change of circumstances," which also reflects the parties' continuing access to the court to rule on custody and visitation matters. Thus, given these fundamental differences, *Goodarzirad* does not help father avoid estoppel.

Indeed, the "doctrine of judicial estoppel has frequently been invoked to bar a party from contesting the validity of a judgment procured by that party. [Citations.] Whether estoppel will actually be applied depends on the significance of the procedural irregularities, whether the court's act violated a comprehensive statutory scheme and considerations of public policy." (*In re Marriage of Jackson* (2006) 136 Cal.App.4th 980, 994–995 [declining to apply estoppel when to do so would undermine California's public policy favoring that a child, if possible, have two parents rather than one]; see *Kristine H. v. Lisa R.* (2005) 37 Cal.4th 156, 161, 166 (*Kristine H.*) [one domestic partner was estopped from arguing that her estranged partner was *not* the parent of their child when she previously stipulated to a judgment declaring them both the " 'joint intended legal parents' "].) Here, based on the terms identified *ante*, we do not have these concerns. (*In re Marriage of Hinman* (1992) 6 Cal.App.4th 711, 717 ["unless the trial court lacked subject matter jurisdiction in the most fundamental sense of the word, i.e., its ' "power to hear or determine the case" ' [citation], [mother] is precluded from attacking the provision of the judgment awarding joint custody of [children] to [father] by virtue of her consent to it"].)

Thus, given that the trial court had subject matter jurisdiction to determine custody and visitation of minor, and that father invoked that jurisdiction, stipulated to the issuance of the 2023 Stipulated Order, and enjoyed the benefits of that order for over two years, it would be unfair to

8

mother to permit him to now challenge its validity. In the words of the California Supreme Court: "To permit [father] to attack the validity of the judgment [he] sought and to which [he] stipulated would ' " 'trifle with the courts.' " ' " (*Kristine H., supra*, 37 Cal.4th at p. 166.) It would also contravene the public policy favoring settlement of disputes in an expeditious and economical manner. (*Assemi, supra*, 7 Cal.4th at pp. 906–907.) Father is thus estopped from challenging the 2023 Stipulated Order's validity in any regard.

## II. *The court properly declined to remove Crawford.*

Father alternatively contends the trial court erred by denying his request to remove Crawford as RM based on ex parte communications she had with mother's attorney in violation of Family Code section 216. We disagree.

As an initial matter, the trial court was correct that Family Code section 216 is not applicable here. Family Code section 216 prohibits "ex parte communication between the attorneys for any party to an action and any court-appointed or court-connected evaluator or mediator . . . ." (Fam. Code, § 216, subd. (a).) Crawford was not a mediator or child custody evaluator appointed by the court. (See Evid. Code, § 730, 1st par. ["court on its own motion or on motion of any party may appoint one or more experts to investigate, to render a report as may be ordered by the court, and to testify as an expert at the trial of the action relative to the fact or matter as to which the expert evidence is or may be required"]; Cal. Rules of Court, rule 5.235(b)(4) [defining " 'court-appointed mediator or evaluator' " as "a professional in private practice appointed by the court to conduct a child custody evaluation or mediation"].) Rather, the parties privately retained Crawford in accordance with their own set of rules governing the RM's

authority in the 2023 Stipulated Order.  As such, Family Code section 216 does not govern the RM.  (See *People v. DeJongh* (2015) 237 Cal.App.4th 1124, 1130 [parents who stipulate to a grant of visitation rights to a grandparent need not comply with Fam. Code, § 3104, the statute authorizing the court to grant grandparent visitation rights if certain conditions are met]; *In re Marriage of Olson* (1993) 14 Cal.App.4th 1, 8 [when parties agree to delegate judicial power to a subordinate official such as a special master, "the parties can stipulate to the special master making determinations which otherwise would be an unlawful delegation of judicial authority"].)

We further agree with the trial court that Crawford acted within the scope of authority granted to her under the 2023 Stipulated Order and that her actions did not suggest bias.[4]  Both parties direct us to *Leslie O. v. Superior Court* (2014) 231 Cal.App.4th 1191 (*Leslie O.*).  There, the reviewing court, after considering the "totality of the circumstances," concluded the court-appointed child custody evaluator "stepped outside her role as evaluator to advocate against" mother and in favor of father by, among other things, including information unfavorable to mother in her report while excluding information unfavorable to father, providing information to father

---

[4] "It is unclear what standard of review applies to a court's ruling on a motion for removal of the evaluator.  Although it is well established that an appellate court reviews for an abuse of discretion a trial court's custody orders (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32 [citations]) . . . , it appears to be an open question what standard of review applies to a court's ruling on a parent's motion for *removal* of a child custody evaluator who has exhibited bias against that parent . . . ."  (*In re Marriage of Adams & Jack A.* (2012) 209 Cal.App.4th 1543, 1564.)

Here, for reasons stated *post*, even under the most deferential standard of review, we conclude based on the totality of the circumstances that the court properly denied father's request for removal.

and encouraging him to seek other counsel, and telling father in effect that she was on his side and that he should keep her informed as to any visitation problems. (*Id*. at pp. 1205, 1209–1212.)

Nothing comparable to the evaluator's conduct in *Leslie O.* occurred here. Father complains of the following: (1) Crawford contacted mother's counsel before she was retained, stating, " 'I'm sending this to you individually with no copies to the parties. If you think there is something that we need in the [retention] agreement, please let me know.' " (2) Crawford advised mother's counsel, " 'If you think it's appropriate, I would like to have the custody evaluation report also.' " (3) Crawford requested that mother's counsel prepare a release form for the child custody evaluation report rather than preparing it herself, and when father complained, Crawford told him, " 'We are spending a great deal of time on procedural matters that would be better spent elsewhere.' " (4) Crawford arranged for separate mediation sessions without disclosing to father that she invited mother's counsel to participate in mother's session. (5) Finally, Crawford, when asked about ex parte communications with mother's counsel, told father that she had " 'no substantive "ex parte" communications with [mother's counsel's] office' . . . ."

In the respondent's brief, mother notes that father, too, engaged in ex parte communications with Crawford, including when he gave Crawford "feedback" (not shared with mother) regarding the parties' agreement to retain her before he executed it. Among other communications, father also advised Crawford that he, too, favored separate sessions with her, stating in an email: "Separate sessions is [*sic*] just what I suggested and in this instance, I would be ok with it." Crawford then replied favorably, "Luke, that sounds reasonable."

11

Moreover, mother's attorney confirmed in writing that he did not know Crawford before she was retained by the parties; that he only had "non-substantive exchanges by email" with her; and that he only conversed with her during "the jointly attended conference call with [father's attorney] and Ms. Crawford on September 16, 2024."

Father does not dispute mother's contentions. In any event, we conclude based on the totality of circumstances that Crawford's communications do not reflect a loss of objectivity in her dealings with the parties. As the *Leslie O.* court "caution[ed,] . . . an evaluator whose conduct in one or two respects appears similar to the [e]valuator's conduct here may not need to be removed. To hold otherwise and thus to endorse appellate micromanagement of every communication or act by the evaluator would make it impossible for evaluators to perform their very difficult and crucial functions." (*Leslie O., supra*, 231 Cal.App.4th at p. 1212; accord, *In re Marriage of Winternitz* (2015) 235 Cal.App.4th 644, 652–653.) So too, here, we decline to micromanage the parties' communications with Crawford, the RM whom they jointly selected and retained pursuant to the terms of the valid 2023 Stipulated Order, based on a handful of communications identified by father that, at best, are ambiguous rather than suggestive of bias.

The trial court's decision not to remove Crawford stands.

## DISPOSITION

The findings and order of November 4, 2024, are affirmed.

Jackson, P. J.

WE CONCUR:

Simons, J.
Burns, J.

A171885/*Kilpatrick v. Hunt*