Filed 6/13/24  California Capitalism Associates v. Marston CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| CALIFORNIA CAPITALISM ASSOCIATES, LLC et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>LESTER MARSTON et al.,<br><br>    Defendants and Appellants. | E078759, E079357<br><br>(Super.Ct.No. CIVSB2121814)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Donald R. Alvarez, Judge.  Affirmed in part; reversed in part and remanded with directions.

Ravi R. Bendapudi, in pro. per. and for Plaintiffs and Appellants California Capitalism Associates. LLC.

Law Office of Frank Lawrence and Frank Lawrence for Defendants and Appellants.

Plaintiffs California Capitalism Associates, LLC and Ravi Bendapudi (collectively plaintiffs) approached the Chemehuevi Indian Tribe (the Tribe) about establishing a legal

1

cannabis agricultural and industrial complex on the Tribe's reservation in San Bernardino County. Plaintiffs allege they retained Lester J. Marston and his law firm Rapport & Marston to advise and assist them in drafting a joint services agreement (JVA) with the Tribe. When the Tribe terminated the JVA based on plaintiffs' breach of the agreement, plaintiffs filed this lawsuit in San Bernardino against their attorneys Marston, David J. Rapport, Kostan Lathoruis, and the law firm (collectively defendants) alleging causes of action for breach of oral contract and professional negligence, among others.

Defendants (all of whom except for Lathoruis reside in and do business in Mendocino County) requested that plaintiffs stipulate to a change of venue from San Bernardino to Mendocino County, but plaintiffs refused. Thereafter, defendants filed a change of venue motion and filed a hybrid motion to quash/dismiss arguing, inter alia, they were officers of the Tribe, and, because of the Tribe's sovereign immunity, the trial court lacked subject matter jurisdiction. The trial court granted the motion to change venue and ordered the case transferred to the Superior Court of Mendocino County. Plaintiffs submitted transfer fees and did not challenge the order. Later, the court granted the motion to quash/dismiss, concluding it lacked subject matter jurisdiction based on Tribal sovereign immunity. Plaintiffs appeal from that order and from a subsequent one granting attorney fees to defendants as the prevailing parties on the change of venue motion. Defendants filed a cross-appeal from the fee order.

In their appeal, plaintiffs argue the trial court lacked jurisdiction to rule on the motion to quash/dismiss because it had already granted the motion to change venue. On

2

the merits, plaintiffs contend the trial court erred by finding it lacked subject matter jurisdiction based on Tribal sovereign immunity. As for the fee order, plaintiffs argue the trial court erred when it found plaintiffs had not acted in good faith when they filed the lawsuit in San Bernardino County instead of Mendocino County. In the cross-appeal, defendants argue the trial court erred in its determination of the reasonable hourly rate applicable to the work performed by their attorney and by refusing to award any fees for legal work performed by defendant Marston and his law clerk son.

We agree with plaintiffs that, once the trial court granted the motion to change venue, it retained very limited jurisdiction to act in the case and exceeded that jurisdiction by ruling on the motion to quash/dismiss. Because we reverse the order granting the motion to quash/dismiss on that basis, we do not reach the merits.

With respect to the fee order, the record supports the trial court's findings that the legal services contract between the parties was performed in Mendocino County, plaintiffs did not act in good faith by filing the lawsuit in San Bernardino, and defendants are entitled to recover their attorney fees as the prevailing parties on the change of venue motion. Although Marston was represented by counsel in this matter, and he did not act *officially* as his own cocounsel or represent any other defendant, the billing records submitted with the fee motion demonstrate he performed the lion's share of the legal work in researching and drafting the change of venue motion. Because for purposes of preparing the change of venue motion he was *functionally* self-represented, the trial court correctly ruled he cannot recover for his own attorney fees. However, Marston's

3

codefendants are not precluded from recovering fees for work Marston performed on their behalf on the change of venue motion, and on remand the trial court shall consider whether those fees are reasonable and how to apportion them appropriately. Finally, we conclude the trial court erred by ruling defendants could not recover for the work conducted by Marston's law clerk. Therefore, we reverse the fee award and remand for further proceedings.

## I.

## FACTS AND PROCEDURAL BACKGROUND

Plaintiffs filed their verified complaint in the San Bernardino County Superior Court on July 27, 2021, alleging seven causes of action including breach of oral contract and professional negligence. Relevant here, plaintiffs alleged they approached the Tribe in March 2017 with a proposal to develop a cannabis agricultural industrial park on the Tribe's reservation in San Bernardino County. When the Tribe agreed to pursue the project and instructed plaintiffs to submit an official proposal, plaintiffs retained Marston and his law firm to draft a JVA. After several delays, Marston submitted a draft JVA to the Tribe. The Tribe ultimately terminated the JVA, asserting plaintiffs had breached the agreement in various ways and failed to cure the breaches.

Except for Lathouris, who resided in Clark County, Nevada, the named defendants resided in and had their place of business in Mendocino County. However, citing Code of Civil Procedure[1] section 395, subdivision (b), plaintiffs alleged venue was proper in

---

[1] Unless otherwise indicated, all additional statutory references shall be to the Code of Civil Procedure.

San Bernardino because the agreement for legal services was to be performed there and the alleged acts of negligence occurred there.

On September 29, 2021, defendants filed a change of venue motion pursuant to section 397, subdivision (a), contending the lawsuit had been filed in the wrong court because they resided in and did business in Mendocino County and Clark County, Nevada, respectively. Indeed, defendants denied that they had rendered any legal opinions to plaintiffs or maintained an attorney-client relationship with them, let alone performed legal services for plaintiffs in San Bernadino County.

Separately, on October 15, 2021, defendants filed a hybrid motion to quash/dismiss the lawsuit arguing, inter alia, they are officials of the Tribe and the trial court lacked subject matter jurisdiction over the lawsuit based on Tribal sovereign immunity.

The trial court heard arguments on the change of venue motion on November 3, 2021, and took the matter under submission. On December 2, 2021, the trial court conducted a hearing on the motion to quash/dismiss, and indicated its tentative ruling was to grant the motion. The court took the matter under submission without issuing a ruling.

On January 5, 2022, the trial court granted defendants' motion to change venue. Plaintiffs did not challenge the order and promptly submitted the venue transfer fees.

On February 4, 2022, defendants filed a motion, pursuant to section 396b, subdivision (b), seeking $74,704.39 in attorney fees as the prevailing parties on the change of venue motion. The requested fees represented 69.07 hours of work performed

by Frank Lawrence, their counsel of record, 59.16 hours performed by defendant Marston, and 3.06 hours performed by Marston's son Nicholas.

The trial court entered an order on February 7, 2022, granting the motion to quash/dismiss. Although the court clerk had served counsel with the order on February 8, 2022, plaintiffs apparently did not learn of the ruling until the February 14 trial setting conference. Counsel for defendants suggested the trial court vacate the change of venue order and hear arguments on the attorney fee motion at the next hearing. Plaintiffs objected to the court's ruling on the motion to quash/dismiss. "Your Honor, how can the Court rule on the motion to dismiss . . . after it's already granted the motion to transfer venue? The Court loses all jurisdiction, seriously." The court confirmed the date for the hearing on defendants' motion for fees and costs and declined to vacate the change of venue order.

On March 25, 2022, plaintiffs filed a notice of appeal from the order granting the motion to quash/dismiss.

During the hearing on the fee motion, defendants argued they were entitled to their attorney fees and costs under section 396b, subdivision (b), because plaintiffs had refused to stipulate to a change of venue and plaintiffs did not act in good faith when they selected San Bernardino County as the venue. Defendants argued the alleged legal services agreement was for defendants to negotiate and draft the JVA, and that all the work performed took place in Mendocino County, not San Bernardino. In addition, defendants argued the evidence submitted with the motion supported the reasonableness

6

of the requested fees. Plaintiffs once more objected that the trial court no longer had jurisdiction after granting the change of venue motion. They argued their selection of San Bernardino as the appropriate venue was in good faith because the contract was performed there. "Where Mr. Marston drafted the agreement, that wasn't a material term of our oral contract . . . . I don't care where he typed it. He just had to deliver it to me here." The court took the matter under submission.

In its written ruling on defendants' fee motion filed May 9, 2022, the trial court found defendants were entitled to their fees under section 396b, subdivision (b), because plaintiffs had not acted in good faith when they selected the venue of San Bernardino County and plaintiffs refused to stipulate to a change of venue.

The court found, however, that the amount of fees requested was not reasonable. First, citing the rule that self-represented attorney litigants cannot recover their own attorney fees, the trial court ruled defendants were not entitled to recover for the hours of work performed by Marston or by his law clerk son. Next, the court indicated the hourly rate sought by Lawrence—$550—was not "overly unreasonable" considering his three decades of experience and qualifications litigating Indian law matters. However, the trial court stated it was concerned because the invoices submitted with the motion had been redacted to remove the hourly rate charged to the clients. "[T]he rate attorney Lawrence charged Defendants would be his reasonable hourly rate," and "all implication is that he is seeking to impose a rate higher than he charged to the client." Moreover, because the change of venue motion was not difficult, and the billing records indicated "Lawrence did

not take the lead [and] acted more as an associate attorney on the matter," the court concluded $350 was a reasonable hourly rate. Finally, as to the number of hours, the court eliminated any hours that were not related to the change of venue motion. For the remaining 36.47 hours, the court ruled the number of hours spent drafting the reply brief for the change of venue motion and the time spent preparing for and arguing the motion at the hearing were inflated and concluded 25.77 hours were reasonably spent on the motion. Applying the hourly rate of $350 to that number of hours, the court awarded defendants fees in the amount of $9,019.50.

Plaintiffs timely appealed from the attorney fee order, and defendants timely cross-appealed.

II.

DISCUSSION

A.    *The Trial Court Exceeded its Jurisdiction by Ruling on Defendants'*
*Motion to Quash/Dismiss After Having Already Ordered the Case Transferred to*
*Mendocino County.*

Plaintiffs did not timely challenge the January 5, 2022, order granting defendants' change of venue motion (see § 400), and the merits of that ruling are not at issue here. Instead, they argue that, once the trial court granted the change of venue motion, it retained only limited authority over the case, and it lacked jurisdiction to rule on defendants' motion to quash/dismiss the case. "[W]hen a party contends that the trial court did not have jurisdiction or authority to make a challenged order, we review the

8

claim de novo." (*In re Marriage of Blake & Langer* (2022) 85 Cal.App.5th 300, 308.) We agree the trial court exceeded its limited authority to act once it entered the change of venue order.

"Generally, the filing of a motion for change of venue operates as a supersedeas or stay of proceedings, and the court cannot rule on other substantive issues while the motion for change of venue is pending." (*Thompson v. Thames* (1997) 57 Cal.App.4th 1296, 1303-1304.) "This rule applies generally where the challenged act deals with the merits of the case and upon matters which should properly be determined by the court of ultimate venue. [Citations.] It does not apply to certain ancillary steps authorized by statute or matters incidental to a consideration by the court of the motion to change venue," such as a severance motion. (*Gutierrez v. Superior Court* (1966) 243 Cal.App.2d 710, 723-724.)

Not surprisingly, the trial court's authority to act *after* it has granted a change of venue motion is also highly circumscribed. In *London v. Morrison* (1950) 99 Cal.App.2d 876 (*London*), the court of appeal held that, although a change of venue order does not vest the transferee court with jurisdiction over the case until the transfer fees and costs are paid and the record is filed in that court (§ 399), the transferor court erred by entering a voluntary dismissal by the plaintiff because, under former section 581b, the court had been "divested . . . of jurisdiction" to enter any further orders except to dismiss the case when the transfer fees and costs were not paid within one year. (*Id*. at p. 879; see *Franklin Capital Corp. v. Wilson* (2007) 148 Cal.App.4th 187, 204, fn. 14 [noting "the

9

particular statute at issue in *London* (former section 581b) was jurisdictional, [and] depriv[ed] the court of all jurisdiction to take any action, including entering of voluntary dismissal"].)

In *Moore v. Powell* (1977) 70 Cal.App.3d 583 the appellate court observed that, "When a motion for change of venue has been granted by the transferor court, but the transferee court has not yet assumed jurisdiction, the transferor court has *limited* powers." (*Id*. at p. 587, italics added.) The transferor court "may, upon proper motion, vacate its previous order granting the change of venue." (*Ibid*., citing *Badella v. Miller* (1955) 44 Cal.2d 81, 86.) In addition, the transferor court "may dismiss the action if the transfer fees are not paid within the time provided." (*Moore*, at p. 587-588, citing § 399 & *London*, *supra*, 99 Cal.App.2d at p. 879.) "Outside of these limited powers," however, "*the court is said to be without jurisdiction*." (*Moore*, at pp. 587-588, citing *London*, at p. 879, italics added; see Cal. Judges Benchbook: Civil Proceedings Before Trial (CJER 2022) Venue, § 9.64, p. 843 ["Aside from these limited powers" spelled out in *Moore*, "a judge of the transferor court has no jurisdiction over the action."].)

As defendants contend, the statute at issue in *London*, *supra*, 99 Cal.App.2d 876 was subsequently amended. Under the current statutory scheme, the order granting defendants' change of venue motion did not automatically vest the transferee court with jurisdiction over the case or completely divest the transferor court of jurisdiction. Instead, the clerk of the transferor court must wait until the time to pursue writ review of the change of venue order has passed before it delivers the case record and papers to the

10

transferee court. (§§ 399, subd. (a), 400; see *Tanzman v. Midwest Express Airlines Inc*. (S.D.Cal. 1996) 916 F.Supp. 1013, 1017 [noting the statutory scheme at issue in *London* was later amended to provide that a venue transfer is not automatic and "a case transfer [is held] in abeyance until after the losing party on a venue motion had a chance to seek a writ."]; 3 Cal. Civil Procedure Before Trial (Cont.Ed.Bar 4th ed. 2023) Changing Venue, § 20.23, p. 20-16.)

Even though a change of venue order no longer automatically divests the transferor court of jurisdiction, the transferor court's authority to act until the case is fully transferred remains limited. (*Moore*, *supra*, 70 Cal.App.3d at p. 587.) And defendants cite no authority whatsoever for the unspoken assumption to their argument, to wit, that an order granting a motion to quash/dismiss is the type of limited relief the transferor court may grant during that interim. An order granting a motion to quash/dismiss based on Tribal sovereign immunity is hardly a matter incidental to or ancillary to the change of venue order. Instead, defendants defend the order by pointing to the trial court's authority to reconsider or vacate interim orders. (Citing *Moore*, at p. 587 & *Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1096-1097.) True, the trial court could have reconsidered and vacated the change of venue order *before* it ruled on the motion to quash/dismiss, but that is patently not what occurred here. This was error.

Defendants also contend that, as a matter of policy, the transferor court should retain jurisdiction to address emergency matters and prevent irreparable harm to the parties until the case is fully transferred. We wholeheartedly agree. As the authors of a

11

respected treatise on California civil procedure suggest, arguably there is a "jurisdictional 'hiatus' during the inevitable delay between the time a transfer is ordered and the time the case file is actually received by the transferee court (perhaps many weeks)." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2023) ¶ 3:588.1, p. 3-177.) During that interval, the interests of justice counsel that the transferor court may, on its own motion or on the motion of a party, either set aside or reconsider the change of venue order for the limited purpose of ruling on requests for temporary restraining orders and other emergency ex parte matters. (*Ibid*.) But this does not help defendants either. The motion to quash/dismiss was not an emergency or ex parte matter, and, to repeat, the trial court did not vacate or reconsider the change of venue order beforehand.

Normally, procedural error is reversible only if it resulted in a miscarriage of justice. (Cal. Const., art VI, § 13; Code Civ. Proc., § 475.) "This general rule, however, is inapplicable if the trial court has acted in excess of its jurisdiction in granting the relief being challenged: If jurisdictional error has occurred, the resulting judgment or order is 'voidable and reversible on appeal even where, as here, it is clear from the record [that no prejudice resulted].'" (*In re Marriage of Jackson* (2006) 136 Cal.App.4th 980, 997.) Because the trial court's order granting the motion to quash/dismiss was "an act in violation of a clear restriction or limitation on the court's power to act and not merely an error of law" (*ibid*.), it is reversible notwithstanding any prejudice to the plaintiffs.

12

Considering our conclusion, we do not address the parties' arguments regarding the merits of the order granting the motion to quash/dismiss. Defendants may refile their motion in the transferee court. (See § 399, subd. (c).)

> B. *The Trial Court Correctly Ruled Defendants Were Entitled to Attorney Fees and Costs as The Prevailing Parties on the Change of Venue Motion.*

Plaintiffs argue the trial court erred by granting the motion for attorney fees because they acted in good faith when they filed the lawsuit in San Bernardino as opposed to Mendocino County.[2] An order finding that the prevailing party on a change of venue motion is entitled to attorney fees and costs under section 396b "will be reversed only if there has been a prejudicial abuse of discretion." (*Mission Imports, Inc. v. Superior Court* (1982) 31 Cal.3d 921, 932.) A trial court abuses its discretion by awarding attorney fees "'only where its action is clearly wrong and without reasonable basis.'" (*Powell v. Tagami* (2018) 26 Cal.App.5th 219, 236-237.) The trial court's

---

[2] On appeal, plaintiffs no longer argue the trial court lacked jurisdiction to hear the fee motion. The clear statutory authority to award attorney fees and costs under section 396b, subdivision (b), is necessarily an additional component of the transferor court's otherwise limited authority to act after the change of venue motion has been granted. (Cf. *Shisler v. Sanfer Sports Cars, Inc.* (2008) 167 Cal.App.4th 1, 6-9 [after granting motion to quash summons for lack of personal jurisdiction, trial court retains jurisdiction to rule on ancillary, statutorily authorized motion for attorney fees].)

In their cross-appeal, defendants argue plaintiffs now "concede[] that [an] award of attorney's fees [is] warranted." Not so. In their respondent's brief filed in the cross-appeal—which concerns the trial court's calculation of fees and not whether any fees are warranted—plaintiffs state they maintain their position that the court erred by finding the original choice of venue was made in bad faith and that no fees were warranted but will not repeat those arguments in the context of defendants' appeal. Instead, for purposes of addressing defendants' arguments about the amount of fees and the trial court's selection of the appropriate attorney hourly rate, plaintiffs stated they would merely assume defendants were entitled to fees.

factual findings in support of an award of attorney fees are reviewed for substantial evidence. (*Farnum v. Iris Biotechnologies Inc.* (2022) 86 Cal.App.5th 602, 609.) ""We look at the evidence in support of the trial court's finding, resolve all conflicts in favor of the respondent and indulge in all legitimate and reasonable inferences to uphold the finding."" (*Jones v. Goodman* (2020) 57 Cal.App.5th 521, 533.) We conclude substantial evidence supports the trial court's finding that no reasonable attorney would conclude San Bernardino was the correct venue, and we find no abuse of discretion either.

The trial court may award attorney fees and costs to the prevailing party on a change of venue motion. "In its discretion, the court may order the payment to the prevailing party of reasonable expenses and attorney's fees incurred in making or resisting the motion to transfer whether or not that party is otherwise entitled to recover his or her costs of action. In determining whether that order for expenses and fees shall be made, the court shall take into consideration (1) whether an offer to stipulate to change of venue was reasonably made and rejected, and (2) whether the motion or selection of venue was made in good faith given the facts and law the party making the motion or selecting the venue knew or should have known. As between the party and his or her attorney, those expenses and fees shall be the personal liability of the attorney not chargeable to the party. Sanctions shall not be imposed pursuant to this subdivision except on notice contained in a party's papers, or on the court's own noticed motion, and after opportunity to be heard." (§ 396b, subd. (b).)

14

"The statute requires the court to assess whether the attorney acted in good faith after having first skillfully evaluated the facts and reviewed applicable statutes and case law. The phrase 'good faith' is ordinarily used to describe that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, means being faithful to one's duty or obligation. [Citation.] Thus, if, after reviewing the factual and legal presentation made by the losing party, the court finds that no reasonable attorney would have honestly chosen such a forum, and that the forum appears to have been selected to impair defendant's right to defend, an award of attorney fees would be entirely proper." (*Metzger v. Silverman* (1976) 62 Cal.App.3d Supp. 30, 38-39.)

There is no dispute as to the first factor. Defendants requested that plaintiffs stipulate to a change of venue and transfer the case from San Bernardino to Mendocino County, but plaintiffs declined.

As for the second factor, the trial court found plaintiffs did not act in good faith when they filed the lawsuit in San Bernardino because Marston and his firm performed all their legal services from their Mendocino County office, and not in San Bernardino. That finding is amply supported by the record.

Section 395, subdivision (a), provides that venue is proper in the county where a contract is to be performed, and, in the absence of an express writing to the contrary, a contract is deemed to have been made in the county where it was performed. In support of the motion, Marston declared that plaintiffs knew venue was proper in Mendocino County because they were aware that all named defendants resided there or in Clark

15

County, Nevada. In addition, Marston declared that, except for one face-to-face negotiation conducted in Marston's Mendocino County office, all his negotiations with plaintiffs took place over the telephone while Marston was physically in his office. In his declaration in opposition to the motion, Bendapudi stated that hand delivery of the JVA for final negotiation and signatures in San Bernardino was a "material term" of the oral contract, and that Marston did deliver the JVA. Finally, in support of the reply, Marston stated he delivered the JVA to the Tribe in San Bernardino, *while there for other Tribal business and not as plaintiffs' attorney*, and that plaintiffs knew all drafting and negotiating work conducted by defendants took place in Mendocino.

Plaintiffs provided no persuasive evidence, other than Bendapudi's declaration, to demonstrate the parties had orally agreed the alleged legal representation would be performed in San Bernardino County. The primary role for which plaintiffs allegedly retained defendants was to negotiate and draft the JVA, and the evidence demonstrates that work was performed by defendants entirely in their office located in Mendocino County. The fact that the subject of that drafting and negotiating related to the Tribe and its reservation in San Bernardino was irrelevant for purposes of determining whether a reasonable attorney would conclude venue was proper there. Nor does the record support plaintiff's assertion that personal delivery of the JVA for signatures in San Bernardino County—for which Martson billed plaintiffs—was a "material term" of the alleged legal services agreement, such that the contract was performed there. The evidence shows that, at most, Marston's physical delivery of the JVA to San Bernardino

16

County was an incidental act to the main work of negotiating and drafting the agreement.

Finally, citing *Fontaine v. Superior Court* (2009) 175 Cal.App.4th 830, 836, plaintiffs argue there is a presumption plaintiffs selected the correct venue, and the trial court should have deferred to that choice when deciding whether plaintiffs acted in good faith. But that "prima facie presumption" applies solely when the trial court rules on the change of venue motion. (*Mitchell v. Superior Court* (1986) 186 Cal.App.3d 1040, 1046.) By granting the motion to change venue, the trial court necessarily ruled defendants had overcome that presumption.

In sum, we conclude the trial court did not abuse its discretion when it found plaintiffs did not act in good faith in selecting San Bernardino as the venue for this lawsuit and that defendants were entitled to their attorney fees and costs under section 396b, subdivision (b).

C.     *The Trial Court Erred in Part When It Calculated Defendants' Attorney Fees.*

In their cross appeal, defendants argue the trial court erred when it calculated their attorney fees. First, they argue the trial court applied incorrect legal criteria when found the suggested hourly rate of $550 was unreasonable and that a rate of $350 was more appropriate. Last, they argue the court erred by ruling they could not recover for the legal work performed by Marston and his law clerk.[3] As stated, *ante*, we review an

---

[3] Defendants do not challenge the trial court's drastic reduction in the number of hours performed by Lawrence that could be recovered.

award of attorney fees under section 396b, subdivision (b), for abuse of discretion. (*Mission Imports, Inc. v. Superior Court*, *supra*, 31 Cal.3d at p. 932.)  However, when the question on appeal is whether the trial court applied the correct legal criteria when determining the award of fees, our review is de novo.  (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1213.)  We agree the trial court erred by ruling neither of the defendants could recover attorney fees for work performed by Marston and his law clerk son, but otherwise find no error.

"'[T]he fee setting inquiry in California ordinarily begins with the "lodestar," i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. "California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award."'  (*PLCM Group, Ins. v. Drexler* (2000) 22 Cal.4th 1084, 1095.)  Generally, the reasonable hourly rate used for the lodestar calculation 'is that prevailing in the community for similar work.'  (*Ibid.*; [Citation.].)"  (*Center for Biological Diversity v. County of San Bernardino* (2010) 188 Cal.App.4th 603, 616.)  "The general rule is '[t]he relevant "community" is that where the court is located.'"  (*Marshall v. Webster* (2020) 54 Cal.App.5th 275, 285.)

"The courts repeatedly have stated that the trial court is in the best position to value the services rendered by the attorneys in his or her courtroom [citation], and this includes the determination of the hourly rate that will be used in the lodestar calculus. [Citation.]  In making its calculation, the court may rely on its own knowledge and

18

familiarity with the legal market, as well as the experience, skill, and reputation of the attorney requesting fees [citation], the difficulty or complexity of the litigation to which that skill was applied [citations], and affidavits from other attorneys regarding prevailing fees in the community and rate determinations in other cases." (*569 East County Boulevard LLC v. Backcountry Against the Dump, Inc.* (2016) 6 Cal.App.5th 426, 436-437 (*569 East County*).)

In his declaration, Lawrence stated he was familiar with the hourly rates charged by lawyers with his amount of experience in the San Bernardino County area, and that he believed $550 would be a reasonable rate. And, defendants submitted a declaration from David Dehnhert, a Marina Del Rey attorney who has practiced Indian law for more than 20 years, as evidence that $550 is a reasonable hourly rate for an attorney with Lawrence's experience. The trial court acknowledged that $550 was not an "overly unreasonable" rate, but expressed concern that it might be much more than the rate Lawrence had charged defendants and that he was improperly seeking to make a profit. Moreover, based on the limited amount of work Lawrence performed on the change of venue motion, the trial court noted Lawrence "acted more as an associate attorney on the matter" and concluded $350 was a reasonable hourly rate.

Defendants argue the trial erred by concluding the reasonableness of the hourly rate depended on what Lawrence had *charged* defendants. We are not convinced the trial court abused its discretion.

19

"There is no *requirement* that the reasonable market rate mirror the *actual* rate billed." (*Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 701, first italics added.) "It is well established that an attorney who accepts a reduced rate from a client is not precluded from seeking a reasonable hourly rate pursuant to the lodestar method. '"The reasonable market value of the attorney's services is the measure of a reasonable hourly rate. [Citations.] This standard applies regardless of whether the attorneys claiming fees charge nothing for their services, charge at below-market or discounted rates, represent the client on a straight contingent fee basis, or are in-house counsel. [Citations.]"'" (*Pasternack v. McCullough* (2021) 65 Cal.App.5th 1050, 1055.) However, a "'"reasonable hourly rate is the product of a multiplicity of factors."'" (*Mountjoy v. Bank of America, N.A.* (2016) 245 Cal.App.4th 266, 272.) The trial court had wide discretion to determine the reasonable hourly rate and to consider, among other factors, the rate of fees Lawrence actually charged defendants. (*Pasternack*, at p. 1058.)

Moreover, when determining Lawrence's reasonable hourly rate, the trial court expressly stated it considered the relative difficulty of the change of venue motion and concluded Lawrence's work on the motion—compared to that of Marston—justified a lower hourly rate. "The court reasonably could have reduced the rates based on its finding that the matter was not complex," and that Lawrence was "doing work that could have been done by lower billing attorneys; . . ." (*Morris v. Hyundai Motor America* (2019) 41 Cal.App.5th 24, 41; see *569 East County*, *supra*, 6 Cal.App.5th at p. 439, fn. 14 ["[T]he trial court's express finding that this case was neither 'novel [n]or complex'

20

can be construed as including an implied finding that utilizing an attorney with such expertise was unnecessary under the circumstances."].)

Finally, although there is no indication in the record the trial court expressly based the chosen rate of $350 on its knowledge and familiarity with the legal market and the rates charged in the area for attorneys with similar experience and expertise in Indian law, we must affirm the fee award if substantial evidence supports the court's express and *implied* findings. (*Apex LLC v. Korusfood.com* (2013) 222 Cal.App.4th 1010, 1017 ["The reviewing court will infer all findings necessary to support the order, and all findings, express or implied, are reviewed under the substantial evidence standard."].) The trial court expressly stated a rate of $550 was not "overly unreasonable," which implies the court ruled the suggested hourly rate was at least within the outside limits of what it would consider reasonable for the litigation. However, for the reasons already stated, the record demonstrates the trial court weighed other factors, such as the complexity of the change of venue motion, when it ruled a lower hourly rate was more reasonable under the circumstances. We find no abuse of discretion.

Next, defendants contend the trial court erred by ruling they could not recover fees for legal work performed by defendant Marston. As the trial court noted, it is well settled that a self-represented attorney litigant who represents no other parties in the litigation cannot recover his or her attorney fees. (*Trope v. Katz* (1995) 11 Cal.4th 274, 280-285; *Leiper v. Gallegos* (2021) 69 Cal.App.5th 284, 293-294.) Defendants argue the

general rule does not apply here because Marston did not represent himself or any other defendant in this case. We are not entirely persuaded.

There is no dispute that defendants retained Lawrence as their attorney of record and Marston was not *technically* self-represented. But, for purposes of the change of venue motion, Marston should be *functionally* treated as having been self-represented (or, at a minimum, to have been cocounsel with Lawrence). This is borne out by defendants' own argument. Defendants assert they retained Lawrence with only one week left to respond to the complaint, and plaintiff refused to grant a brief extension. Therefore, defendants argue "it was essential under the circumstances that the [Lawrence] receive assistance [from Marston] in preparing the motion to change venue." And the billing records submitted in support of the fee motion indicate Marston performed the *lion's share* of the legal research and drafting work on the motion. Marston's decision to take the lead and prepare the change of venue motion himself may have been practical under the circumstances, but we cannot say the trial court abused its discretion by treating him like any other self-represented attorney who cannot recover fees for his own work. However, we agree with defendants that the rule from *Trope v. Katz*, *supra*, 11 Cal.4th 274 does not preclude Marston's *codefendants* from recovering their attorney fees for the work Marston performed *on their behalf* when drafting the change of venue motion. (See *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 93-98; *Gilbert v. Master Washer & Stamping Co.* (2001) 87 Cal.App.4th 212, 220-223.) On remand, the trial court shall determine whether the fees associated

with the work performed by Marston for his codefendants was reasonable and how to apportion them.

Finally, we agree the trial court erred by ruling defendants could not recover fees for the work performed by Nicholas Marston, who is not a party to this litigation and who performed legal research in support of the change of venue motion as Lester Marston's law clerk.  An attorney fees award should include compensation for the work of legal assistants when the "prevailing practice . . . is to bill separately for paralegal service time at a reasonable market value rate"—in other words, when the cost of paralegal work is not included as overhead in the rates charged for attorney work. (*Guinn v. Dotson* (1994) 23 Cal.App.4th 262, 269.)  Under those circumstances, "[a]n award of attorney fees which does not compensate for paralegal service time would not fully compensate the attorney."  (*Ibid*.; see *Roe v. Halbig* (2018) 29 Cal.App.5th 286, 312 ["paralegal fees may be awarded as attorney fees if the trial court deems it appropriate"]; *Gorman v. Tassajara Development Corp.*, *supra*, 178 Cal.App.4th at p. 96.)  The billing records submitted with the fee motion demonstrate the work performed by Nicholas was billed separately.  On remand, the trial court shall determine whether the request for fees related to the work performed by Nicholas was reasonable.

III.

DISPOSITION

The February 7, 2022, order granting defendants' motion to quash/dismiss is reversed.  The reversal shall be without prejudice to defendants refiling their motion to

23

quash/dismiss in the Superior Court of Mendocino County once the matter is fully transferred there after payment of all transfer fees.  (See § 399, subds. (a), (c).)

The May 9, 2022, order granting defendants' motion for attorney fees is reversed in part and remanded for further proceedings consistent with this decision.

The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(3), (5).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER

J.

We concur:

RAMIREZ

P. J.

RAPHAEL

J.